Justice Thomas
delivered the opinion of the Court.
The question presented by this case is whether an injured seaman may recover punitive damages for his employer’s willful failure to pay maintenance and cure. Petitioners argue that under Miles v. Apex Marine Corp., 498 U. S. 19 (1990), seamen may recover only those damages available under the Jones Act, 46 U. S. C. § 30104. We disagree. Historically, punitive damages have been available and awarded in general maritime actions, including some in maintenance and cure. We find that nothing in Miles or the Jones Act eliminates that availability.
I
Respondent Edgar L. Townsend was a crew member of the Motor Tug Thomas. After falling on the steel deck of the tugboat and injuring his arm and shoulder, respondent claimed that petitioner Atlantic Sounding,[1] the owner of the tugboat, advised him that it would not provide maintenance and cure. See 496 F. 3d 1282, 1283 (CA11 2007). “A claim for maintenance and cure concerns the vessel owner’s obliga *408 tion to provide food, lodging, and medical services to a seaman injured while serving the ship.” Lewis v. Lewis & Clark Marine, Inc., 531 U. S. 438, 441 (2001).
Petitioners thereafter filed an action for declaratory relief regarding their obligations with respect to maintenance and cure. Respondent filed his own suit under the Jones Act and general maritime law, alleging negligence, unseaworthiness, arbitrary and willful failure to pay maintenance and cure, and wrongful termination. In addition, respondent filed similar counterclaims in the declaratory judgment action, seeking punitive damages for the denial of maintenance and cure. The District Court consolidated the cases. See 496 F. 3d, at 1283-1284.
Petitioners moved to dismiss respondent’s punitive damages claim. The District Court denied the motion, holding that it was bound by the determination in Hines v. J. A. LaPorte, Inc., 820 F. 2d 1187, 1189 (CA11 1987) (per curiam), that punitive damages were available in an action for maintenance and cure. The court, however, agreed to certify the question for interlocutory appeal. See 496 F. 3d, at 1284. The United States Court of Appeals for the Eleventh Circuit agreed with the District Court that Hines controlled and held that respondent could pursue his punitive damages claim for the willful withholding of maintenance and cure. 496 F. 3d, at 1285-1286. The decision conflicted with those of other Courts of Appeals, see, e. g., Guevara v. Maritime Overseas Corp., 59 F. 3d 1496 (CA5 1995) (en banc); Glynn v. Roy Al Boat Management Corp., 57 F. 3d 1495 (CA9 1995), and we granted certiorari, 555 U. S. 993 (2008).
II
Respondent claims that he is entitled to seek punitive damages as a result of petitioners’ alleged breach of their “maintenance and cure” duty under general maritime law. We find no legal obstacle to his doing so.
*409 A
Punitive damages have long been an available remedy at common law for wanton, willful, or outrageous conduct. Under English law during the colonial era, juries were accorded broad discretion to award damages as they saw fit. See, e.g., Lord Townsend v. Hughes, 2 Mod. 150, 86 Eng. Rep. 994 (C. P. 1676) (“[I]n civil actions the plaintiff is to recover by way of compensation for the damages he hath sustained, and the jury are the proper judges thereof” (emphasis in original)); 1 T. Sedgwick, Measure of Damages §349, p. 688 (9th ed. 1912) (hereinafter Sedgwick) (“Until comparatively recent times juries were as arbitrary judges of the amount of damages as of the facts”). The common-law view “was that ‘in eases where the amount of damages was uncertain[,] their assessment was a matter so peculiarly within the province of the jury that the Court should not alter it.’” Feltner v. Columbia Pictures Television, Inc., 523 U. S. 340, 353 (1998) (quoting Dimick v. Schiedt, 293 U. S. 474, 480 (1935); alteration in original).
The jury’s broad discretion to set damages included the authority to award punitive damages when the circumstances of the ease warranted. Just before the ratification of the Constitution, Lord Chief Justice Pratt explained: “[A] jury ha[s] it in [its] power to give damages for more than the injury received. Damages are designed not only as a satisfaction to the injured person, but likewise as a punishment to the guilty, to deter from any such proceeding for the future, and as a proof of the detestation of the jury to the action itself.” Wilkes v. Wood, Lofft 1, 18-19, 98 Eng. Rep. 489, 498-499 (C. P. 1763); see also Pacific Mut. Life Ins. Co. v. Haslip, 499 U. S. 1, 25 (1991) (Scalia, J., concurring in judgment) (“[P]unitive or ‘exemplary’ damages have long been a part of Anglo-American law”); Huckle v. Money, 2 Wils. 205, 207, 95 Eng. Rep. 768, 769 (C. P. 1763) (declining to grant a new trial because the jury “ha[s] done right in giving exemplary damages”).
*410 American courts have likewise permitted punitive damages awards in appropriate cases since at least 1784. See, e. g., Genay v. Norris, 1 S. C. L. 6, 7 (C. P. and Gen. Sess. 1784) (approving award of “very exemplary damages” because spiking wine represented a “very wanton outrage”); Coryell v. Colbaugh, 1 N. J. L. 77 (1791) (concluding that a breach of promise of marriage was “of the most atrocious and dishonourable nature” and supported “damages for example’s sake, to prevent such offences in future” (emphasis in original)). Although some States elected not to allow juries to make such awards, the vast majority permitted them. See 1 Sedgwick §§352, 354, at 694, 700. By the middle of the 19th century, “punitive damages were undoubtedly an established part of the American common law of torts [and] no particular procedures were deemed necessary to circumscribe a jury’s discretion regarding the award of such damages, or their amount.” Haslip, supra, at 26-27 (SCALIA, J., concurring in judgment).
This Court has also found the award of punitive damages to be authorized as a matter of common-law doctrine. In Day v. Woodworth, 13 How. 363 (1852), for example, the Court recognized the “well-established principle of the common law, that in actions of trespass and all actions on the case for torts, a jury may inflict what are called exemplary, punitive, or vindictive damages upon a defendant....” Id., at 371; see also Philadelphia, W., & B. R. Co. v. Quigley, 21 How. 202, 214 (1859) (“Whenever the injury complained of has been inflicted maliciously or wantonly, and with circumstances of contumely or indignity, the jury are not limited to the ascertainment of a simple compensation for the wrong committed against the aggrieved person”); Barry v. Edmunds, 116 U. S. 550, 562 (1886) (“[According to the settled law of this court, [a plaintiff] might show himself, by proof of the circumstances, to be entitled to exemplary damages calculated to vindicate his right and protect it against future similar invasions”).
*411 B
The general rule that punitive damages were available at common law extended to claims arising under federal maritime law. See Lake Shore & Michigan Southern R. Co. v. Prentice, 147 U. S. 101, 108 (1893) (“[C]ourts of admiralty... proceed, in cases of tort, upon the same principles as courts of common law, in allowing exemplary damages ... ”). One of this Court’s first cases indicating that punitive damages were available involved an action for marine trespass. See The Amiable Nancy, 3 Wheat. 546 (1818). In the course of deciding whether to uphold the jury’s award, Justice Story, writing for the Court, recognized that punitive damages are an available maritime remedy under the proper circumstances. Although the Court found that the particular facts of the case did not warrant such an award against the named defendants, it explained that “if this were a suit against the original wrong-doers, it might be proper to . . . visit upon them in the shape of exemplary damages, the proper punishment which belongs to such lawless misconduct.” Id., at 558; see also Barry, supra, at 563 (“In The Amiable Nancy, which was the case of a marine tort, Mr. Justice Story spoke of exemplary damages as The proper punishment which belongs to .. . lawless misconduct’ ” (citation omitted)).
The lower federal courts followed suit, finding that punitive damages were available in maritime actions for tortious acts of a particularly egregious nature. See, e. g., McGuire v. The Golden Gate, 16 F. Cas. 141, 143 (No. 8,815) (CC ND Cal. 1856) (“In an action against the perpetrator of the wrong, the aggrieved party would be entitled to recover not only actual damages but exemplary, — such as would vindicate his wrongs, and teach the tort feasor the necessity of reform”); Ralston v. The State Rights, 20 F. Cas. 201, 210 (No. 11,540) (DC ED Pa. 1836) (“[I]t is not legally correct... to say that a court cannot give exemplary damages, in a case like the present, against the owners of a vessel”); Boston Mfg. Co. v. Fiske, 3 F. Cas. 957 (No. 1,681) (CC Mass. 1820) *412 (Story, J.) (“In cases of marine torts, or illegal captures, it is far from being uncommon in the admiralty to allow costs and expences, and to mulct the offending parties, even in exemplary damages, where the nature of the case requires it”). In short, prior to enactment of the Jones Act in 1920, “maritime jurisprudence was replete with judicial statements approving punitive damages, especially on behalf of passengers and seamen.” Robertson, Punitive Damages in American Maritime Law, 28 J. Mar. L. & Comm. 73, 115 (1997) (hereinafter Robertson); see also 2 Sedgwick §599b, at 1156 (“Exemplary damages are awarded in Admiralty, as in other jurisdictions”); 2 J. Sutherland, Law of Damages § 392, p. 1272 (4th ed. 1916) (“As a rule a court of equity will not award [punitive] damages, but courts of admiralty will...” (footnote omitted)).[2]
C
Nothing in maritime law undermines the applicability of this general rule in the maintenance and cure context. See G. Gilmore & C. Black, Law of Admiralty § 6-13, p. 312 (2d ed. 1975) (hereinafter Gilmore & Black) (explaining that a seaman denied maintenance and cure “has a free option to claim damages (including punitive damages) under a general maritime law count”); Robertson 163 (concluding that breach of maintenance and cure is one of the particular torts for which general maritime law would most likely permit the *413 awarding of punitive damages “assuming . . . the requisite level of blameworthiness”)- Indeed, the legal obligation to provide maintenance and cure dates back centuries as an aspect of general maritime law, and the failure of a seaman’s employers to provide him with adequate medical care was the basis for awarding punitive damages in cases decided as early as the 1800’s.
The right to receive maintenance and cure was first recognized in this country in two lower court decisions authored by Justice Story. See Harden v. Gordon, 11 F. Cas. 480 (No. 6,047) (CC Me. 1823); Reed v. Canfield, 20 F. Cas. 426 (No. 11,641) (CC Mass. 1832). According to Justice Story, this common-law obligation to seamen was justified on humanitarian and economic grounds: “If some provision be not made for [seamen] in sickness at the expense of the ship, they must often in foreign ports suffer the accumulated evils of disease, and poverty, and sometimes perish from the want of suitable nourishment.... [T]he merchant himself derives an ultimate benefit [because i]t encourages seamen to engage in perilous voyages with more promptitude, and at lower wages.” Harden, supra, at 483; see also Reed, supra, at 429 (“The seaman is to be cured at the expense of the ship, of the sickness or injury sustained in the ship’s service”).
This Court has since registered its agreement with these decisions. “Upon a full review ... of English and American authorities,” the Court concluded that “the vessel and her owners are liable, in case a seaman falls sick, or is wounded, in the service of the ship, to the extent of his maintenance and cure, and to his wages, at least so long as the voyage is continued.” The Osceola, 189 U. S. 158, 175 (1903). Decisions following The Osceola have explained that in addition to wages, “maintenance” includes food and lodging at the expense of their ship, and “cure” refers to medical treatment. Lewis, 531 U. S., at 441; see also Gilmore & Black § 6-12, at 305-306 (describing “maintenance and cure” as including medical expenses, a living allowance, and unearned wages).
*414 In addition, the failure of a vessel owner to provide proper medical care for seamen has provided the impetus for damages awards that appear to contain at least some punitive element. For example, in The City of Carlisle, 39 F. 807 (DC Ore. 1889), the court added $1,000 to its damages award to compensate an apprentice seaman for “gross neglect and cruel maltreatment of the [seaman] since his injury.” Id., at 809, 817. The court reviewed the indignities to which the apprentice had been subjected as he recovered without any serious medical attention, see id., at 810-812, and explained that “if owners do not wish to be mulct in damages for such misconduct, they should be careful to select men worthy to command their vessels and fit to be trusted with the safety and welfare of their crews, and particularly apprentice boys.” Id., at 817; see also The Troop, 118 F. 769, 770-771, 773 (DC Wash. 1902) (explaining that $4,000 was a reasonable award because the captain’s “failure to observe the dictates of humanity” and obtain prompt medical care for an injured seaman constituted a “monstrous wrong”).[3]
D
The settled legal principles discussed above establish three points central to resolving this case. First, punitive damages have long been available at common law. Second, the common-law tradition of punitive damages extends to maritime claims.[4] And third, there is no evidence that *415 claims for maintenance and cure were excluded from this general admiralty rule. Instead, the pre-Jones Act evidence indicates that punitive damages remain available for such claims under the appropriate factual circumstances. As a result, respondent is entitled to pursue punitive damages unless Congress has enacted legislation departing from this common-law understanding. As explained below, it has not.
Ill
A
The only statute that could serve as a basis for overturning the common-law rule in this case is the Jones Act. Congress enacted the Jones Act primarily to overrule The Osceola, supra, in which this Court prohibited a seaman or his family from recovering for injuries or death suffered due to his employers’ negligence. To this end, the statute provides in relevant part:
“A seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law, with the right of trial by jury, against the employer. Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section.” 46 U. S. C. § 30104(a) (incorporating the Federal Employers’ Liability Act, 45 U.S. C. §§51-60).
The Jones Act thus created a statutory cause of action for negligence, but it did not eliminate pre-existing remedies available to seamen for the separate common-law cause of *416 action based on a seaman’s right to maintenance and cure. Section 30104 bestows upon the injured seaman the right to “elect” to bring a Jones Act claim, thereby indicating a choice of actions for seamen — not an exclusive remedy. See Funk & Wagnalls New Standard Dictionary of the English Language 798 (1913) (defining “elect” as “[t]o make choice of”); 1 Bouvier’s Law Dictionary 979 (8th ed. 1914) (defining “election” as “[c]hoice; selection”). Because the then-accepted remedies for injured seamen arose from general maritime law, see The Osceola, 189 U. S., at 175, it necessarily follows that Congress was envisioning the continued availability of those common-law causes of action. See Chandris, Inc. v. Latsis, 515 U. S. 347, 354 (1995) (“Congress enacted the Jones Act in 1920 to remove the bar to suit for negligence articulated in The Osceola, thereby completing the trilogy of heightened legal protections [including maintenance and cure] that seamen receive because of their exposure to the perils of the sea” (internal quotation marks omitted)); Stewart v. Dutra Constr. Co., 543 U. S. 481, 487 (2005) (describing the Jones Act as “removing] this bar to negligence suits by seamen”). If the Jones Act had been the only remaining remedy available to injured seamen, there would have been no election to make.
In addition, the only statutory restrictions expressly addressing general maritime claims for maintenance and cure were enacted long after the passage of the Jones Act. They limit its availability for two discrete classes of people: foreign workers on offshore oil and mineral production facilities, see § 503(a)(2), 96 Stat. 1955, codified at 46 U. S. C. § 30105(b), and sailing school students and instructors, § 204, 96 Stat. 1589, codified at 46 U. S. C. § 50504(b). These provisions indicate that “Congress knows how to” restrict the traditional remedy of maintenance and cure “when it wants to.” Omni Capital Int’l, Ltd. v. Rudolf Wolff & Co., 484 U. S. 97, 106 (1987). Thus, nothing in the statutory scheme for maritime *417 recovery restricts the availability of punitive damages for maintenance and cure for those, like respondent, who are not precluded from asserting the general maritime claim.
Further supporting this interpretation of the Jones Act, this Court has consistently recognized that the Act “was remedial, for the benefit and protection of seamen who are peculiarly the wards of admiralty. Its purpose was to enlarge that protection, not to narrow it.” The Arizona v. Anelich, 298 U. S. 110, 123 (1936); see also American Export Lines, Inc. v. Alvez, 446 U. S. 274, 282 (1980) (plurality opinion) (declining to “read the Jones Act as sweeping aside general maritime law remedies”); O’Donnell v. Great Lakes Dredge & Dock Co., 318 U. S. 36, 43 (1943) (“It follows that the Jones Act, in extending a right of recovery to the seaman injured while in the service of his vessel by negligence, has done no more than supplement the remedy of maintenance and cure . . . ”); Pacific S. S. Co. v. Peterson, 278 U. S. 130, 134, 138-139 (1928) (holding that the Jones Act “was not intended to restrict in any way the long-established right of a seaman to maintenance, cure and wages”).
Not only have our decisions repeatedly observed that the Jones Act preserves common-law causes of action such as maintenance and cure, but our case law also supports the view that punitive damages awards, in particular, remain available in maintenance and cure actions after the Act’s passage. In Vaughan v. Atkinson, 369 U. S. 527 (1962), for example, the Court permitted the recovery of attorney’s fees for the “callous” and “willful and persistent” refusal to pay maintenance and cure. Id., at 529-531. In fact, even the Vaughan dissenters, who believed that such fees were generally unavailable, agreed that a seaman “would be entitled to exemplary damages in accord with traditional concepts of the law of damages” where a “shipowner’s refusal to pay maintenance stemmed from a wanton and intentional disregard of the legal rights of the seaman.” Id., at 540 (opinion of Stewart, J.); see also Fiske, 3 F. Cas., at 957 (Story, J.) (arguing *418 that counsel fees are awardable in “[cjourts of admiralty ... not technically as costs, but upon the same principles, as they are often allowed damages in cases of torts, by courts of common law, as a recompense for injuries sustained, as exemplary damages, or as a remuneration for expences incurred, or losses sustained, by the misconduct of the other party”).[5]
Nothing in the text of the Jones Act or this Court’s decisions issued in the wake of its enactment undermines the continued existence of the common-law cause of action providing recovery for the delayed or improper provision of maintenance and cure. Petitioners do not deny the availability of punitive damages in general maritime law, or identify any cases establishing that such damages were historically unavailable for breach of the duty of maintenance and cure. The plain language of the Jones Act, then, does not provide the punitive damages bar that petitioners seek.
B
Petitioners nonetheless argue that the availability of punitive damages in this case is controlled by the Jones Act because of this Court’s decision in Miles, 498 U. S. 19; see also post, at 428-429 (opinion of Alito, J.). In Miles, petitioners argue, the Court limited recovery in maritime cases involving death or personal injury to the remedies available under the Jones Act and the Death on the High Seas Act (DOHSA), *419 46 U. S. C. §§ 30301-30306.[6] Petitioners’ reading of Miles is far too broad.
Miles does not address either maintenance and cure actions in general or the availability of punitive damages for such actions. The decision instead grapples with the entirely different question whether general maritime law should provide a cause of action for wrongful death based on unseaworthiness. By providing a remedy for wrongful death suffered on the high seas or in territorial waters, the Jones Act and DOHSA displaced a general maritime rule that denied any recovery for wrongful death. See 498 U. S., at 23-34. This Court, therefore, was called upon in Miles to decide whether these new statutes supported an expansion of the relief available under pre-existing general maritime law to harmonize it with a cause of action created by statute.
The Court in Miles first concluded that the “unanimous legislative judgment behind the Jones Act, DOHSA, and the many state statutes” authorizing maritime wrongful-death actions supported the recognition of a general maritime action for wrongful death of a seaman. Id., at 24 (discussing Moragne v. States Marine Lines, Inc., 398 U. S. 375 (1970), which overruled The Harrisburg, 119 U. S. 199 (1886)). Congress had chosen to limit, however, the damages available for wrongful-death actions under the Jones Act and DOHSA, such that damages were not statutorily available for loss of society or lost future earnings. See Miles, 498 U. S., at 21, 31-32. The Court thus concluded that Congress’ judgment must control the availability of remedies for wrongful-death actions brought under general maritime law, id., at 32-36.
*420 The reasoning of Miles remains sound. As the Court in that case explained, “[w]e no longer live in an era when seamen and their loved ones must look primarily to the courts as a source of substantive legal protection from injury and death; Congress and the States have legislated extensively in these areas.” Id., at 27. Furthermore, it was only because of congressional action that a general federal cause of action for wrongful death on the high seas and in territorial waters even existed; until then, there was no general common-law doctrine providing for such an action. As a result, to determine the remedies available under the common-law wrongful-death action, “an admiralty court should look primarily to these legislative enactments for policy guidance.” Ibid. It would have been illegitimate to create common-law remedies that exceeded those remedies statutorily available under the Jones Act and DOHSA. See id., at 36 (“We will not create, under our admiralty powers, a remedy . . . that goes well beyond the limits of Congress’ ordered system of recovery for seamen’s injury and death”).
But application of that principle here does not lead to the outcome suggested by petitioners or the dissent. See post, at 425-426. Unlike the situation presented in Miles, both the general maritime cause of action (maintenance and cure) and the remedy (punitive damages) were well established before the passage of the Jones Act. See supra, at 409-414. Also unlike the facts presented by Miles, the Jones Act does not address maintenance and cure or its remedy.[7] It is therefore possible to adhere to the traditional understanding of maritime actions and remedies without abridging or violating the Jones Act; unlike wrongful-death actions, this traditional understanding is not a matter to which “Congress has *421 spoken directly.” See Miles, supra, at 31 (citing Mobil Oil Corp. v. Higginbotham, 436 U. S. 618, 625 (1978)). Indeed, the Miles Court itself acknowledged that “[t]he Jones Act evinces no general hostility to recovery under maritime law,” 498 U. S., at 29, and noted that statutory remedy limitations “would not necessarily deter us, if recovery . . . were more consistent with the general principles of maritime tort law,” id., at 35. The availability of punitive damages for maintenance and cure actions is entirely faithful to these “general principles of maritime tort law,” and no statute casts doubt on their availability under general maritime law.
Moreover, petitioners’ contention that Miles precludes any action or remedy for personal injury beyond that made available under the Jones Act was directly rejected by this Court in Norfolk Shipbuilding & Drydock Corp. v. Garris, 532 U. S. 811, 818 (2001). That case involved the death of a harbor worker. Ibid. There, the Court recognized a maritime cause of action for wrongful death attributable to negligence although neither the Jones Act (which applies only to seamen) nor DOHSA (which does not cover territorial waters) provided such a remedy. Id., at 817-818. The Court acknowledged that “it will be the better course, in many cases that assert new claims beyond what those statutes have seen fit to allow, to leave further development to Congress.” Id., at 820. But the Court concluded that the cause of action at issue there was “new only in the most technical sense” because “[t]he general maritime law has recognized the tort of negligence for more than a century, and it has been clear since Moragne that breaches of a maritime duty are actionable when they cause death, as when they cause injury.” Ibid. The Court thus found that “Congress’s occupation of this field is not yet so extensive as to preclude us from recognizing what is already logically compelled by our precedents.” Ibid.
Because Miles presented no barrier to this endorsement of a previously unrecognized maritime cause of action for *422 negligent wrongful death, we see no legitimate basis for a contrary conclusion in the present case. Like negligence, “[t]he general maritime law has recognized ... for more than a century” the duty of maintenance and cure and the general availability of punitive damages. See Garris, supra, at 820; see also supra, at 409-414. And because respondent does not ask this Court to alter statutory text or “expand” the general principles of maritime tort law, Miles does not require us to eliminate the general maritime remedy of punitive damages for the willful or wanton failure to comply with the duty to pay maintenance and cure. “We assume that Congress is aware of existing law when it passes legislation,” Miles, supra, at 32, and the available history suggests that punitive damages were an established part of the maritime law in 1920, see supra, at 411-414.[8]
It remains true, of course, that “[a]dmiralty is not created in a vacuum; legislation has always served as an important source of both common law and admiralty principles.” Miles, supra, at 24. And it also is true that the negligent denial of maintenance and cure may also be the subject of a Jones Act claim. See Cortes v. Baltimore Insular Line, Inc., 287 U. S. 367 (1932).[9] But the fact that seamen commonly seek to recover under the Jones Act for the wrongful withholding of maintenance and cure does not mean that the *423 Jones Act provides the only remedy for maintenance and cure claims. Indeed, contrary to petitioners’ view that the Jones Act replaced in their entirety the remedies available at common law for maintenance and cure, the Cortes decision explicitly acknowledged a seaman’s right to choose among overlapping statutory and common-law remedies for injuries sustained by the denial of maintenance and cure. See id., at 374-375 (A seaman’s “cause of action for personal injury created by the statute may have overlapped his cause of action for breach of the maritime duty of maintenance and cure . . . . In such circumstances it was his privilege, in so far as the causes of action covered the same ground, to sue indifferently on any one of them”).[10]
As this Court has repeatedly explained, “remedies for negligence, unseaworthiness, and maintenance and cure have different origins and may on occasion call for application of slightly different principles and procedures.” Fitzgerald v. United States Lines Co., 374 U. S. 16, 18 (1963); see also Peterson, 278 U. S., at 138, 139 (emphasizing that a seaman’s action for maintenance and cure is “independent” and “cumulative” from other claims such as negligence and that the maintenance and cure right is “in no sense inconsistent with, or an alternative of, the right to recover compensatory damages [under the Jones Act]”). See also Gilmore & Black § 6- *424 23, at 342 (“It is unquestioned law that both the Jones Act and the unseaworthiness remedies are additional to maintenance and cure: the seaman may have maintenance and cure and also one of the other two”)- The laudable quest for uniformity in admiralty does not require the narrowing of available damages to the lowest common denominator approved by Congress for distinct causes of action.[11] Although “Congress ... is free to say this much and no more,” Miles, 498 U. S., at 24 (internal quotation marks omitted), we will not attribute words to Congress that it has not written.
IV
Because punitive damages have long been an accepted remedy under general maritime law, and because nothing in the Jones Act altered this understanding, such damages for the willful and wanton disregard of the maintenance and cure obligation should remain available in the appropriate case as a matter of general maritime law.[12] Limiting recovery for maintenance and cure to whatever is permitted by the Jones Act would give greater pre-emptive effect to the Act than is required by its text, Miles, or any of this Court’s other deci *425 sions interpreting the statute. For these reasons, we affirm the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

It is so ordered.

 Atlantic Sounding Co., Inc., is a wholly owned subsidiary of Weeks Marine, Inc., the other petitioner in this case.

 Although punitive damages awards were rarely upheld on judicial review, but see Roza v. Smith, 65 F. 592, 596-597 (DC ND Cal. 1895); Gallagher v. The Yankee, 9 F. Cas. 1091, 1093 (No. 5,196) (DC ND Cal. 1859), that fact does not draw into question the basic understanding that punitive damages were considered an available maritime remedy. Indeed, in several cases in which a judgment awarding punitive damages was overturned on appeal, the reversal was based on unrelated grounds. See, e. g., The Margharita, 140 F. 820, 824 (CA5 1905); Pacific Packing & Nav. Co. v. Fielding, 136 F. 577, 580 (CA9 1905); Latchtimacker v. Jacksonville Towing & Wrecking Co., 181 F. 276, 278 (CC SD Fla. 1910).

 Although these eases do not refer to “punitive” or “exemplary” damages, scholars have characterized the awards authorized by these decisions as such. See Robertson 103-105; Edelman, Guevara v. Maritime Overseas Corp.: Opposing the Decision, 20 Tulane Mar. L. J. 349, 351, and n. 22 (1996).

 The dissent correctly notes that the handful of early cases involving maintenance and cure, by themselves, do not definitively resolve the question of punitive damages availability in such cases. See post, at 429-431 (opinion of Alito, J.). However, it neglects to acknowledge that the general common-law rule made punitive damages available in maritime actions. See supra, at 411-412. Nor does the dissent explain why main *415 tenance and cure actions should be excepted from this general rule. It is because of this rule, and the fact that these early eases support — rather than refute — its application to maintenance and cure actions, see supra, at 413-414, that the pre-Jones Act evidence supports the conclusion that punitive damages were available at common law where the denial of maintenance and cure involved wanton, willful, or outrageous conduct.

 In the wake of Vaughan, a number of lower courts expressly held that punitive damages can be recovered for the denial of maintenance and cure. See, e. g., Hines v. J. A. Laporte, Inc., 820 F. 2d 1187, 1189 (CA11 1987) (per curiam) (upholding punitive damages award of $5,000 for an “arbitrary and bad faith breach of the duty to furnish maintenance and cure”); Robinson v. Pocahontas, Inc., 477 F. 2d 1048, 1049-1052 (CA1 1973) (affirming punitive damages award of $10,000 which was based, in part, on the defendant’s initial withholding of maintenance and cure on the pretext that the seaman had been fired for cause).

 DOHSA applies only to individuals killed (not merely injured) by conduct on the high seas. See 46 U. S. C. § 30802. Because this case involves injuries to a seaman, and not death on the high seas, DOHSA is not relevant.

 Respondent’s claim is not affected by the statutory amendments to the Jones Act that limit maintenance and cure recovery in cases involving foreign workers on offshore oil and mineral production facilities, see 46 U. S. C. § 30105, or sailing school students and instructors, § 50504. See supra, at 416-417.

 In light of the Court’s decision in Norfolk Shipbuilding & Drydock Corp. v. Garris, 532 U. S. 811, 818 (2001), our reading of Miles cannot, as the dissent contends, represent an “abrup[t]” change of course. See post, at 425.

 For those maintenance and cure claims that do not involve personal injury (and thus cannot be asserted under the Jones Act), the dissent argues that punitive damages should be barred because such claims are based in contract, not tort. See post, at 431-432. But the right of maintenance and cure “was firmly established in the maritime law long before recognition of the distinction between tort and contract.” O’Donnell v. Great Lakes Dredge & Dock Co., 318 U. S. 36, 42 (1943). Although the right has been described as incident to contract, it cannot be modified or waived. See Cortes, 287 U. S., at 372.

 The fact that, in some eases, a violation of the duty of maintenance and cure may also give rise to a Jones Act claim, see post, at 426-427 (opinion of Alito, J.), is significant only in that it requires admiralty courts to ensure against double recovery. See Fitzgerald v. United States Lines Co., 374 U. S. 16, 18-19 (1963) (authorizing a jury trial when a maintenance and cure claim is joined with a Jones Act claim because “[Requiring a seaman to split up his lawsuit, submitting part of it to a jury and part to a judge ... can easily result in too much or too little recovery”). Thus, a court may take steps to ensure that any award of damages for lost wages in a Jones Act negligence claim is offset by the amount of lost wages awarded as part of a recovery of maintenance and cure. See, e. g., Petition of Oskar Tiedemann & Co., 367 F. 2d 498, 505, n. 6 (CA3 1966); Crooks v. United States, 459 F. 2d 631, 633 (CA9 1972).

 Although this Court has recognized that it may change maritime law in its operation as an admiralty court, see Edmonds v. Compagnie Generale Transatlantique, 443 U. S. 256, 271 (1979), petitioners have not asked the Court to do so in this case or pointed to any serious anomalies, with respect to the Jones Act or otherwise, that our holding may create. Nor have petitioners argued that the size of punitive damages awards in maintenance and cure cases necessitates a recovery cap, which the Court has elsewhere imposed. See Exxon Shipping Co. v. Baker, 554 U. S. 471, 514-515 (2008) (imposing a punitive-to-compensatory ratio of 1:1). We do not decide these issues.

 Because we hold that Miles does not render the Jones Act’s damages provision determinative of respondent’s remedies, we do not address the dissent’s argument that the Jones Act, by incorporating the provisions of the Federal Employers’ Liability Act, see 46 U. S. C. § 30104(a), prohibits the recovery of punitive damages in actions under that statute. See post, at 427-428.