CALLAHAN, Circuit Judge,
dissenting:
I agree with my colleagues that 18 U.S.C. § 1595 does not apply to Boehm’s pre-December 19, 2003 conduct. However, despite Boehm’s abhorrent conduct, I dissent from the majority’s determination that punitive damages are available under § 1595. It may be desirable to authorize the recovery of punitive damages under § 1595, but Congress has yet to do so, and we are not empowered to do so for Congress.
The majority’s reasoning is straightforward: (a) the statute is basically silent as to the availability of punitive damages; (b) punitive damages were allowed in common law when a tort was intentional and outrageous; (c) trafficking in humans almost by definition is intentional and outrageous; and (d) therefore a victim may seek punitive damages under § 1595.
The attraction of this approach is its simplicity. However, the Supreme Court’s relevant opinions require a more sophisticated approach, one based on Congress’s intent at the time the statute was enacted as well as an analysis of the law at that time.
The majority relies heavily on the Supreme Court’s opinion in Smith v. Wade, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983), in holding that it can look to the common law of torts to determine whether punitive damages are available under § 1595. It is true that Wade held that punitive damages are available under 42 U.S.C. § 1983, but Wade was a 5-4 decision, and more importantly, applying the Court’s approach in Wade to § 1595 results in a determination that punitive damages are not available under the statute.
Section 1983 is derived from the Civil Rights Act of 1871. Id. at 34-35, 103 S.Ct. 1625. The majority opinion in Wade, finding little evidence of Congress’s intent in 1871, looked to common law as it then existed. Id. at 32, 103 S.Ct. 1625. The majority basically reasoned that under common law “the punitive damages doctrine” was “accepted as settled law.” However, then-justice Rehnquist made a strong argument in his dissent that “a significant number of American jurisdictions refuse to condone punitive damage *1103 awards.” 461 U.S. at 59, 103 S.Ct. 1625.[1] Whatever the relative merits of the competing positions, the Court’s essential inquiry was to look to the law as it existed when Congress passed the legislation. The Supreme Court continues to adhere to this approach. See Atlantic Sounding Co. v. Townsend, 557 U.S. 404, 129 S.Ct. 2561, 2573, 174 L.Ed.2d 382 (2009) (quoting from Miles v. Apex Marine Corp., 498 U.S. 19, 32, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), that ‘We assume that Congress is aware of existing law when it passes legislation.”).
Section 1595 was enacted as part of the Trafficking Victims Protection Act (“TVPA”) in 2000. Pub.L. No. 106-386, 114 Stat. 1464 (codified at 22 U.S.C. §§ 7101-7200 (2000)). In the intervening 130 years since the Civil Rights Act of 1871, the law has changed, and Congress, far from relying silently on common law, has demonstrated its ability to include, or not include, claims for punitive damages when it enacts legislation. For example, in the Civil Rights Act of 1991, Congress amended Title VII to authorize the recovery of compensatory and punitive damages in certain circumstances. See United States v. Burke, 504 U.S. 229, 232 n. 2, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992). Also, in 1989, Congress amended § 104(a)(2) of the Internal Revenue Code to provide that punitive damages were not sheltered from taxation. Id. at 244 n. 3, 112 S.Ct. 1867 (Justice Scalia concurring in the judgment). These actions, which took place prior to the TVPA, are noted in Supreme Court opinions and are representative of many other Congressional actions establishing that, by 2000, whether a federal statute authorized punitive damages depended on Congressional intent rather than on the existing common law.
The first draft of the TVPA, dated November 22, 1999, provided a civil action for a violation of § 1589, stating “the court may award actual damages, punitive damages, reasonable attorneys’ fees and other litigation costs reasonably incurred.” H.R.Rep. No. 106-487(1), at 7 (1999). A *1104 second draft contained the same provision. H.R.Rep. No. 106-487(11), at 8 (2000). However, the third and final version of the TVPA, dated October 5, 2000, eliminated the civil damages provision altogether. H.R.Rep. No.106-939 (2000) (conf.rep.). Thus, as enacted in 2000, the TVPA did not create a private cause of action for damages, ordinary or punitive. Pub.L. No. 106-386. Instead, Congress focused on harsher criminal penalties.[2]
In 2003, Congress reconsidered the TVPA in order to authorize appropriations for fiscal years 2004 and 2005, as well as for “other purposes.” H.R.Rep. No. 108-264(11), at 1 (2003). At that time, Congress drafted a civil damages provision for the TVPA. The initial draft provided that a civil suit may be filed “in any appropriate district court of the United States [which] may award actual damages, punitive damages, reasonable attorneys’ fees, and other litigation costs reasonably incurred.” Id. at 5. However, when the revision was enacted, the TVPA civil remedy provisions allowed only for recovery of “damages and reasonable attorneys fees.” 18 U.S.C. § 1595; see also 22 U.S.C. §§ 7101-7200. The provision for punitive damages was dropped.
This change may have resulted from a letter from the Department of Justice (DOJ) generally supporting the Trafficking Victims Protection Reauthorization Act of 2003, but opposing the creation of a private right of action.[3] H.R.Rep. No. 108-264(11), at 3. The DOJ’s letter is the only listed commentary on the proposed punitive damages section in the House Report. It appears that Congress partially heeded DOJ’s advice and created a private cause of action for damages and attorneys’ fees, but did not provide for punitive damages.[4] In sum, a review of the TVPA’s legislative history shows that far from deferring to federal common law, Congress in 2003, when it created a private cause of action under TVPA, considered and declined to *1105 adopt language authorizing punitive damages.[5]
This Congressional decision should settle the matter even under Wade, 461 U.S. 30, 103 S.Ct. 1625. In Wade, the Court first noted that “there was little in [§ 1983’s] legislative history concerning the damages recoverable for this tort liability.” Id. at 34, 103 S.Ct. 1625. It was only “[i]n the absence of more specific guidance,” that the Court “looked first to the common law of torts.” Id. See also Franklin v. Gwinnett County Public Schools, 503 U.S. 60, 70-71, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992) (“absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute”). Here, there is “clear direction;” there is “more specific guidance.” In 2000 Congress considered creating a private cause of action including punitive damages and decided not to create a private cause of action at all. In 2003, Congress again considered creating a private cause of action including punitive damages, and this time did create a private cause of action but omitted the proposed language that allowed for punitive damages. We should abide by Congress’s decision.
Finally, recognizing that Congress did not provide for punitive damages in § 1595 is consistent with a long-standing tenet of statutory interpretation. “[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.” Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11, 19, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); see also Owner-Operator Independent Drivers Ass’n v. Swift Transp. Co., 632 F.3d 1111, 1121 (9th Cir.2011) (same); City of Colton v. American Promotional Events, Inc-West, 614 F.3d 998, 1007 (9th Cir.2010) (same). Here, TVPA’s legislative history shows that Congress deliberately limited civil remedies to compensatory damages and attorneys’ fees. We should not go further.
As then-Justice Rehnquist noted in his dissent in Wade, 461 U.S. at 57-59, 103 S.Ct. 1625, creating a claim for punitive damages raises concerns that are distinct from defining the scope of compensatory damages. Here, Congress implicitly recognized this when it enacted the TVPA and its provision for a civil remedy. Congress considered several drafts that included provisions for punitive damages, but ultimately, after being advised by DOJ of the problems inherent in the creation of a private cause of action, passed legislation that does not provide for punitive damages. I dissent because, regardless of the desirability of allowing for punitive damages under 18 U.S.C. § 1595, Congress *1106 chose not to do so, and we should abide by its decision.

. Justice Rehnquisl’s dissent was joined by Chief Justice Burger and Justice Powell. Justice Rehnquist noted:
A fundamental premise of our legal system is the notion that damages are awarded to compensate the victim — to redress the injuries that he or she actually has suffered. D. Dobbs, Remedies § 3.1 (1973); C. McCormick, The Law of Damages 1 (1935). In sharp contrast to this principle, the doctrine of punitive damages permits the award of “damages” beyond even the most generous and expansive conception of actual injury to the plaintiff. This anomaly is rationalized principally on three grounds. First, punitive damages “are assessed for the avowed purpose of visiting a punishment upon the defendant.” C. McCormick, Law of Damages 275 (1935) (emphasis added); D. Dobbs, Handbook of the Law of Remedies § 3.9, at 205 (1973); K. Redden, Punitive Damages, § 2.1 (1980); Electrical Workers v. Foust, 442 U.S. 42, 48, 99 S.Ct. 2121, 2125, 60 L.Ed.2d 698 (1979). Second, the doctrine is rationalized on the ground that it deters persons from violating the rights of others. Ibid. Third, punitive damages are justified as a “bounty” that encourages private lawsuits seeking to assert legal rights. Ibid.
Punitive damages are generally seen as a windfall to plaintiffs, who are entitled to receive full compensation for their injuries — but no more. Even assuming that a punitive "fine” should be imposed after a civil trial, the penalty should go to the state, not to the plaintiff — who by hypothesis is fully compensated. Moreover, although punitive damages are “quasi-criminal,” Huber v. Teuber, 10 D.C. 484, 490 (1877), their imposition is unaccompanied by the types of safeguards present in criminal proceedings. This absence of safeguards is exacerbated by the fact that punitive damages are frequently based upon the caprice and prejudice of jurors. Walther & Plein, Punitive Damages; A Critical Analysis, 49 Marq. L.Rev. 369 (1966).
461 U.S. at 57-59, 103 S.Ct. 1625.

.President Clinton, in announcing his signing the TVPA into law, gave a summary of the ways in which the new legislation would combat human trafficking. He stated that the law "create[d] new felony criminal offenses for trafficking in human beings and subjects any person convicted of any of these new crimes to forfeiture of his or her assets.” White House Office of Commons, Radio Address Paper on Combating Violence Against Women President Clinton’s Radio Address to the Nation: Legislation to Combat Violence Against Women, Fight Trafficking in Persons, and Assist Victims of Terrorism October 28, 2000, 10/29/00, 2000 WL 1617213 (2000). Compare with House Conference Report on No. 106-939. The Report shows that Sec. 2002 of H.R. 3244 addresses anti-terrorism judgments rather than anti-trafficking, and specifically references punitive damages awards. This contrast suggests that had Congress intended to allow for punitive damages for anti-trafficking violations, it would have expressly provided for such damages in the TVPA.

. The DOJ cautioned that "creation of a private right of action is a complex undertaking that should be approached only after careful consideration of collateral consequences and the appropriate standard for establishing a civil violation.” H.R.Rep. No. 108-264(11), at 13. Rather than amending the TVPA to "creat[e] a federal civil remedy, one that would include treble damages,” the DOJ suggested that amendment of the Racketeer Influenced and Corrupt Organizations Act (RICO) [(18 U.S.C. §§ 1961-19680)] would be a more appropriate legislative action. Id. at 15-16. In addition, the DOJ questioned Congress's purpose as well as the need to create a new federal tort. Id. at 16. The department's letter reminded Congress that state tort laws encompass "the entire range of trafficking behaviors” under which a victim may recover, thus leaving no "need to recreate such a scheme at a Federal level.” Id.

. Congress again considered the TVPA in 2008, but did not add a provision for punitive damages. 154 Cong. Rec. H10888-01 (2008).

. This decision seems reasonable as it is not clear that punitive damages are necessary to punish the defendant or to fairly compensate a plaintiff. Section 1595 generally comes into play only after a defendant has been criminally convicted in violation of 18 U.S.C. § 1591. Section 1591(b) provides for substantial mandatory sentences for individuals convicted under § 1591(a), § 1593 provides for mandatory restitution, and § 1594(d) provides for forfeitures. The mandatory restitution appears to include "medical services relating to physical, psychiatric, or psychological care,” "physical and occupational therapy or rehabilitation,” "necessary transportation, temporary housing, and child care expenses,” “lost income,” "attorneys' fees, as well as other costs incurred,” and "any other losses suffered by the victim as a proximate result of the offense.” 18 U.S.C. § 2259(b)(3). In addition, there is no question that § 1595 provides full compensatory damages and attorneys’ fees.