Filed 10/13/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MIRA CHLOE PRICKETT, | |
| Plaintiff and Appellant, | G058575 |
| v. | (Super. Ct. No. 30-2016-00890746) |
| BONNIER CORPORATION et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Randall J. Sherman, Judge. Affirmed.

McGuinn, Hillsman & Palefsky and John R. Hillsman for Plaintiff and Appellant.

Hinshaw & Culbertson, Forrest Booth and Pamela L. Schultz for Defendants and Respondents.

**INTRODUCTION**

A case from 1836 described seamen as "'a class of persons remarkable for their rashness, thoughtlessness and improvidence. They are generally necessitous, ignorant of the nature and extent of their own rights and privileges, and for the most part incapable of duly appreciating their value. They combine, in a singular manner, the apparent anomalies of gallantry, extravagance, profusion in expenditure, indifference to the future, credulity, which is easily won, and confidence, which is readily surprised.' [Citation.]" (*Brown v. Lull* (CC Mass. 1836) 4 F. Cas. 407, 409, cited in *Dutra Grp. v. Batterton* __ U.S. __ [139 S.Ct. 2275, 2279], fn. 1.) Herman Melville first went to sea in 1838 so these were the shipmates he sailed with and later wrote about in *Moby Dick*; courts of his day took a solicitous approach toward the problems of the hardy souls engaged in seafaring commerce.

But admiralty law has evolved since the days when it was entirely judge-made and mariners were practically wards of the court. Since the early 20th century, when Congress began legislating in this area, the role of the courts has changed from leader to follower, from promulgation to interpretation. As the United States Supreme Court has explained in its most recent opinion on the matter, the courts must now leave the development of novel claims and remedies to the legislatures. For that reason, we must affirm the judgment in this case.

The case arose from a movie-making accident. After her father was injured diving in French Polynesia, Mira Chloe Prickett sued Bonnier Corporation and World Publications, LLC (collectively Bonnier) for compensatory and punitive damages under general maritime law. The trial court granted a judgment on the pleadings against her on the grounds that neither compensatory damages for loss of her father's society nor punitive damages were available under general maritime law. Appellant Prickett has not cited to us any admiralty authority that has allowed a child to recover loss of society

2

damages for a nonfatal injury to a non-seaman on the high seas, and – without legislative impetus or compelling logic for such a result – we must decline to do so.

## FACTS

In December 2011, Prickett's father, Michael, was seriously injured while scuba diving in French Polynesia. He was part of a crew filming a "webisode," an advertisement for diving equipment designed and manufactured by codefendant Bare Sports Canada, Ltd., which Bonnier had been engaged to produce. Bonnier allegedly engaged Top Dive Rangiroa (Top Dive) as an independent contractor to supervise the dive.[1]

Prickett, like her father a Hawaii resident, sued Bonnier in Orange County Superior Court for gross negligence, for "peculiar risk," and "rescue doctrine" under general maritime law. She asked for compensatory damages for loss of her father's society and also for punitive damages.[2]

In February 2017, Bonnier demurred to Prickett's complaint and moved to strike her claims for loss of society damages and punitive damages. The grounds for both motions were that neither damages for loss of society nor punitive damages were recoverable under general maritime law.[3] The Honorable Thierry Colaw heard both motions in June 2017; he overruled the demurrer and denied the motion to strike.[4] In essence, he ruled that Pickett was not precluded from recovering loss of society damages and punitive damages as a matter of law.

In August 2018, Bonnier moved for judgment on the pleadings, on the ground that a new Ninth Circuit case, *Batterton v. Dutra Group* (9th Cir. 2018) 880 F.3d

---

[1] Top Dive provided the dive vessel and the dive master. Top Dive is not a party to this action.

[2] California state law does not permit recovery by a child for loss of consortium. (*Southern California Gas Leak Cases* (2019) 7 Cal.5th 391, 399.)

[3] Bonnier also argued that the peculiar risk and rescue doctrine causes of action were deficient in other ways.

[4] The court rejected a Ninth Circuit opinion, *Chan v. Society Expeditions, Inc.* (9th Cir. 1994) 39 F.3d 1398 as "neither persuasive nor binding," while relying on an Alameda County Superior Court decision, *Kabasinskas v. Maersk Line* (Jun. 7, 2016) 2016 Cal. Super. LEXIS 9755.

1089 (*Batterton*), put paid to Prickett's claim for loss of society damages. As of January 2019, the case was in front of a new judge, the Honorable Randall Sherman.[5] *Batterton* was appealed to the United States Supreme Court, and Judge Sherman postponed a decision on the motion for judgment on the pleadings until the Supreme Court had issued its opinion.

*The Dutra Group v. Batterton, supra,* __ U.S. __ [139 S.Ct. 2275] (*Dutra*) was issued on June 24, 2019. The Supreme Court reversed the Ninth Circuit, holding that punitive damages were *not* available for a maritime claim of injury owing to unseaworthiness.[6] (*Id.* at p. 2278.) This was the sole issue before the court, as it had been before the Ninth Circuit. (*Batterton, supra,* 880 F.3d at p. 1090.)

Judge Sherman issued an order granting Bonnier's motion for judgment on the pleadings on September 13, 2019. He ruled that *Dutra* precluded the recovery of both loss of society damages and punitive damages under general maritime law.

## DISCUSSION

We first address a procedural issue: Judge Sherman's authority to grant Bonnier's motion for judgment on the pleadings after Judge Colaw had overruled Bonnier's demurrer and denied its motion to strike on the same grounds. In actions founded on federal law, state law governs in procedural matters unless a federal statute provides otherwise. (*Simmons v. Ware* (2013) 213 Cal.App.4th 1035, 1047.)

Code of Civil Procedure section 438, subdivision (c)(1)(B)(ii), permits a defendant to move for judgment on the pleadings on the ground that "[t]he complaint does not state facts sufficient to constitute a cause of action against that defendant." A motion for judgment on the pleadings is the equivalent to a demurrer in that "[t]he grounds for motion . . . shall appear on the face of the challenged pleading or from any matter of which the court is required to take judicial notice." (Code Civ. Proc., § 438,

---

[5] We have taken judicial notice of Judge Colaw's retirement in 2018.

[6] Unseaworthiness as a means of recovery is discussed *post*.

4

subd. (d).) A party may make a motion for judgment on the pleadings even though "[t]he moving party has already demurred to the complaint or answer, as the case may be, on the same grounds as is the basis for the motion provided for in this section and the demurrer has been overruled, provided that there has been a material change in applicable case law or statute since the ruling on the demurrer." (*Id.*, subd. (g).)

Prickett argued that Judge Sherman could not grant a motion for judgment on the pleadings after Judge Colaw overruled a demurrer and denied a motion to strike on the same grounds. But a similar situation occurred in *People v. Edward D. Jones & Co.* (2007) 154 Cal.App.4th 627 (*Jones*), a securities case in which one judge overruled a demurrer based on federal preemption, and a second judge granted a motion for judgment on the pleadings and dismissed the case on the same grounds.[7] (*Id.* at pp. 631-633.) The *Jones* court held that even if the second judge should not have ruled on the motion for judgment on the pleadings – in effect overruling the first judge's order on demurrer – the error must still be analyzed on the merits for prejudice. That is, if the second ruling was correct on the preemption issue, there could be no prejudice and therefore no reversible error. (*Jones, supra,* 154 Cal.App.4th at p. 634; see also *In re Marriage of Barthold* (2008) 158 Cal.App.4th 1301, 1313 [procedural error reviewed for miscarriage of justice] (*Barthold*).)

Like the court in *Barthold*, we are aware of the tension between the constitutional mandate to reverse only for miscarriage of justice[8] and the need to conserve judicial resources by discouraging both judge shopping and repeatedly making the same motion. (*Barthold, supra,* 158 Cal.App.4th at p. 1314.) We are somewhat dubious of

---

[7] The federal law involved in the demurrer was Securities and Exchange Commission Rule 10b-10, while the basis of the motion for judgment on the pleadings was the National Securities Market Improvement Act of 1996. (*Jones, supra,* 154 Cal.App.4th at pp. 631-632.)

[8] California Constitution, article VI, section 13: "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or *for any error as to any matter of procedure*, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Italics added.)

that court's reliance on Code of Civil Procedure section 1008 to deter frivolous and time-wasting motions for reconsideration. (*Ibid.*) After all, most losing parties think the judge was wrong, and only after an appeal can it be determined which ruling was correct – the first one or the second one. But we cannot dispute the principle that errors of procedure may be reversed only if there has been a miscarriage of justice – that is, an error causing a less favorable result to the appealing party. (See *People v. Cahill* (1993) 5 Cal.4th 478, 492; see also *F.P. v. Monier* (2017) 3 Cal.5th 1099, 1108.) Here any error in rehearing the motion resulted in the correct result, making it ineluctably harmless. We therefore conclude reversible error cannot be founded on any procedural error in hearing the motion.[9]

We turn now to the substantive issue. We review de novo a judgment entered after the trial court has granted a motion for judgment on the pleadings (*Smiley v. Citibank* (1995) 11 Cal.4th 138, 145), and that is our approach here.

The existence of admiralty jurisdiction over a tort claim depends on two factors: location and connection. "A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. [Citation.] The connection test raises two issues. A court, first, must 'assess the general features of the type of incident involved,' [citation], to determine whether the incident has 'a potentially disruptive impact on maritime commerce.' [Citation.] Second, a court must determine whether 'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.' [Citation.]" (*Grubart, Inc. v. Great Lakes Dredge & Dock* (1995) 513 U.S. 527, 534 (*Grubart*).) Admiralty jurisdiction is undisputed in this case,

_____

[9] Although Prickett argued at length in her opening brief that Judge Sherman committed an "entirely void act" when he granted the motion for judgment on the pleadings, she conceded in two sentences in her reply brief and at oral argument that this was not the case.

and we agree the circumstances – a scuba diving accident in the waters around French Polynesia – comply with the location and connection test as set forth in *Grubart*.

So we come to the trial court's application of *Dutra* to our case. Because the United States Supreme Court decision in *Dutra* played such a large role in the proceedings below, it merits some extended discussion here. The immediate issue in *Dutra*, as it was in the underlying Ninth Circuit's *Batterton* decision, was the availability of punitive damages in unseaworthiness cases. (*Dutra, supra*, 139 S.Ct. at p. 2278.)

*Dutra* includes a comprehensive discussion of the evolution of maritime law – in both its common-law and statutory forms – since the early 19th century. According to the Supreme Court, admiralty law was exclusively judge-made until 1920, when Congress enacted the Merchant Marine Act of 1920, 46 U.S.C.S. Appen. § 688 et seq., better known as the Jones Act.[10] The court described the Jones Act as "codif[ying] the rights of injured mariners and creat[ing] new statutory claims that were freed from many of the common-law limitations on recovery." (*Dutra, supra,* 139 S.Ct. at p. 2281.) The Jones Act also provided injured mariners with the right to a jury trial. (*Ibid*.)

In the meantime, the venerable common-law doctrine of unseaworthiness was evolving. As the court explained, an unseaworthiness claim originally allowed sailors to collect their wages after refusing to board an unsafe ship. It also permitted insurers to refuse to pay for lost or damaged cargo. By the late 1940's, however, the doctrine had transformed to hold the owner strictly liable for any injury aboard a vessel. (*Dutra, supra*, 139 S.Ct. at pp. 2279-2280, 2281-2282.) "'[T]he owner's duty to furnish a seaworthy ship is absolute and completely independent of his duty under the Jones Act to exercise reasonable care.' [Citation.]" (*Id.* at p. 2282.)

In the course of its discussion of admiralty law, the *Dutra* court referred to two prior opinions, *Miles v. Apex Marine Corp.* (1990) 498 U.S. 19 (*Miles*), and *Atlantic*

---

[10] Congress also enacted the Death on the High Seas Act, 46 U.S.C.S. Appen. § 761, in 1920.

7

*Sounding Co., Inc. v. Townsend* (2009) 557 U.S. 404 (*Atlantic Sounding*), which the court stated "governed" the *Dutra* issues. (*Dutra, supra,* 139 S.Ct. at p. 2283.) Observing that neither the Death on the High Seas Act nor the Jones Act allowed loss of society damages, the *Miles* court had concluded, "The general maritime claim here alleged that [decedent] had been killed as a result of the unseaworthiness of the vessel. It would be inconsistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence. We must conclude that there is no recovery for loss of society in a general maritime action for the wrongful death of a Jones Act seaman." (*Miles, supra,* 498 U.S. at pp. 32-33.) *Atlantic Sounding* held that punitive damages were recoverable in an action based on maintenance and cure.[11] (*Atlantic Sounding, supra,* 557 U.S. at p. 407.) The Supreme Court reaffirmed both cases.

*Miles* and *Atlantic Sounding* "governed" *Dutra,* not because their individual circumstances resembled the circumstances of *Dutra,* but because the approach the court used in arriving at its decision in each of the former cases was the same approach it adopted in *Dutra*. The court explained how admiralty law changed once Congress began enacting statutes relating to maritime matters. In the early 19th century, there were no maritime statutes, and "'seamen led miserable lives.' [Citation.]" (*Dutra, supra,* 139 S.Ct. at p. 2279.) Sailors had nowhere to turn for protection but to the courts. The courts, in turn, took a "paternalistic" view of their role in protecting seamen "'against the effects of the superior skill and shrewdness of masters and owners of ships.' [Citation.]" (*Id*. at pp. 2279, 2287.) The courts saw their role as placing a "humane and liberal"

---

[11]      Maintenance and cure, another early judge-made doctrine, required a ship's master to provide food, lodging, and medical care to a seaman injured while serving aboard ship. This doctrine developed to prevent a ship's owner or captain from dumping an injured seaman at the nearest port and leaving him to fend for himself. (*Dutra, supra,* 139 S.Ct. at pp. 2279, 2286.)

8

shield between ignorant and improvident sailors and ruthless and profit-driven ship owners and masters.

All this began to change, however, when Congress started legislating in the 1920's with the Jones Act.  Since then several federal statutes have been enacted to protect maritime workers, including longshoremen, and states with harbors have enacted similar laws.  (See, e.g., Harb. & Nav. Code, §§ 873 [maintenance and cure], 874 [death on a voyage], 863 [unseaworthy vessel], 861 [definition of "seamen"].)  As a result, the courts' role has also changed.  No longer the sole champions of sailors' rights, courts now are careful not to tread on Congress' toes; as the *Dutra* court stated, they seek to "maintain uniformity with Congress's clearly expressed policies" and to avoid introducing "novel remedies contradictory to those Congress has provided in similar areas."  (*Dutra, supra,* 139 S.Ct. at pp. 2284, 2286.)  In Melville's day, the courts made maritime law; now Congress leads and the courts follow.  Our modern role recognizes the fact that, as Justice O'Connor put it for a unanimous court in *Miles*, "We sail in occupied waters."  (*Miles, supra,* 498 U.S. at p. 36.)

In *Dutra*, the court made it clear that *Miles* was the theme and *Atlantic Sounding* was the variation.[12]  Far from limiting or canceling out the *Miles* holding, *Atlantic Sounding* was a "gloss" on *Miles* rather than a departure from it.  (*Dutra, supra*, 139 S.Ct. at p. 2283.)  Awards for punitive damages in maintenance and cure actions were a long-accepted remedy under general maritime law before the Jones Act.  (*Atlantic Sounding, supra,* 557 U.S. at p. 424.)  By contrast, there was no history of punitive damages awards in unseaworthiness claims, and so the court, constrained by *Miles*, declined to recognize "a new entitlement to punitive damages where none previously existed."  (*Dutra, supra,* 139 S.Ct. at pp. 2284, 2287.)

---

[12]     As a federal district court in Florida observed, some courts had erroneously looked upon *Atlantic Sounding* as overruling *Miles* on the availability of punitive damages under general maritime law.  (See *Berns v. Royal Caribbean Cruises Ltd*. (S.D. Fla., Aug. 26, 2014) 2014 U.S. Dist. LEXIS 193418 *5.)

In this case, during the hearing on the motion for judgment on the pleadings, Prickett's counsel informed the court that his client "is not suing for unseaworthiness" and that her father "is not alleged to have been a seaman." He also disclaimed any resort to the Jones Act. In her opening brief in this appeal, Prickett asserts that her case is not covered by the Jones Act or the Death on the High Seas Act, that the accident occurred on the high seas, and that her father was neither a seaman nor fatally injured.[13] We accept those analyses.

All of which means that *Chan v. Society Expeditions, Inc.* (9th Cir. 1994) 39 F.3d 1398 (*Chan*) closely approximates the facts of this case: a nonfatal accident to a non-seaman on the high seas. In *Chan*, a cruise ship passenger was seriously injured when an inflatable raft landing him and his daughter on an atoll in French Polynesia[14] capsized, throwing him into the surf. The ensuing complaint included a claim for loss of consortium under general maritime law. (*Id.* at pp. 1402, 1407.) Relying on *Miles,* the *Chan* court looked to both the Jones Act and the Death on the High Seas Act for "guidance in determining what remedies should be available in an admiralty case, such as this one, that falls outside the ambit of statutory maritime law." (*Id.* at pp. 1407-1408.)

The Jones Act did not permit loss of society damages for injury to a seaman, and the Death on the High Seas Act did not permit loss of society damages for a death of "an individual" on the high seas.[15] (*Chan, supra,* 39 F.3d at p. 1407.) The court recognized that neither act applied to the plaintiff: he was not a Jones Act seaman, and

---

[13]     Michael Prickett and his wife sued Bonnier Corporation in Alameda County Superior Court. In the Alameda complaint, Michael Prickett alleged that he was a Jones Act seaman. He also sued for maintenance and cure. The case settled for $7.8 million.

[14]     It is worth pondering how the law in this area might have developed if French Polynesia were not so attractive.

[15]     The *Chan* court recognized a different outcome for longshoremen and passengers injured or killed in state territorial waters, that is, within three miles of shore. (*Chan, supra,* 39 F.3d at p. 1407.)

The Death on the High Seas Act, 46 U.S.C.S. section 30302, provides, "When the death of an individual is caused by wrongful act, neglect, or default occurring on the high seas beyond 3 nautical miles from the shore of the United States, the personal representative of the decedent may bring a civil action in admiralty against the person or vessel responsible. The action shall be for the exclusive benefit of the decedent's spouse, parent, child, or dependent relative."

10

he was not killed. He also was not injured in state territorial waters, so neither did the remedies afforded in that circumstance apply. "Accordingly, we hold that loss of consortium and loss of society damages are not available in these circumstances [i.e., injury to a non-seaman on the high seas] under general maritime law. This conclusion best serves the goal of uniformity in remedies in maritime cases that the Supreme Court emphasized in *Miles*." (*Id.* at p. 1408.)

Like the court in *Chan*, we conclude *Miles* precludes us from recognizing an entitlement to a remedy under general maritime law where none previously existed. Prickett has not cited any published case in which a child was allowed to sue for loss of society damages for a nonfatal injury to a non-seaman on the high seas. Both *Miles* and *Dutra* militate against us being the first to do so.

It would be anomalous to place loss of society damages beyond the reach of the families of those who go down to the sea in ships for their living – those whose miserable lives, hazardous and unpredictable occupation, and improvident ways *formerly* evoked a "special solicitude" from the courts – while allowing families of non-seamen to recover these damages.[16] The United States Supreme Court has cautioned us not to get ahead of Congress in defining new maritime remedies, and we will abide by this admonition.

---

[16] We recognize that, "In light of . . . the roles now played by the Judiciary and the political branches in protecting, sailors, the special solicitude to sailors has only a small role to play in contemporary maritime law" (*Dutra, supra,* 139 S.Ct. at p. 2287), but the anomaly seems to us unmistakable nonetheless.

## DISPOSITION

The judgment is affirmed.  Respondents' request to augment the record is denied.  Respondents are to recover their costs on appeal.


                                        BEDSWORTH, ACTING P. J.

WE CONCUR:


FYBEL, J.


THOMPSON, J.

12