# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-30032

WILLIE MECHE,

Plaintiff - Appellant Cross-Appellee

v.

ALEX DOUCET; KEY MARINE SERVICES, L.L.C.,

Defendants - Appellees Cross-Appellants

United States Court of Appeals
Fifth Circuit

**FILED**

January 22, 2015

Lyle W. Cayce
Clerk

Appeals from the United States District Court
for the Western District of Louisiana

Before DAVIS, WIENER, and HAYNES, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Plaintiff-Appellant/Cross-Appellee Willie Meche ("Meche") filed this action seeking maintenance and cure and damages under the Jones Act and general maritime law against his former employer, Defendant-Appellee/Cross-Appellant Key Marine Services, L.L.C. ("Key"), and his former supervisor, Defendant-Appellee/Cross-Appellant Alex Doucet ("Doucet"). Following a bench trial, the district court ruled in Meche's favor and against Key and Doucet on his maintenance and cure claims, but against Meche on his unseaworthiness and Jones Act negligence claims. In addition to awarding maintenance and cure, the district court awarded Meche punitive damages,

No. 14-30032

attorney's fees, costs, and pre- and post-judgment interest against both Defendants.

Meche now appeals every adverse aspect of the district court's judgment. Key and Doucet cross-appeal and challenge the district court's judgment on several grounds. For the reasons described below, we vacate the entire judgment against both Doucet and Key. We affirm the district court's judgment in all other respects.

I.

Meche was the captain of the crew boat MISS CATHERINE, a vessel which served a drilling rig off the coast of Louisiana. On June 20, 2008, the vessel was tied to the rig, which was under tow to a new location near Cote Blanche, Louisiana. Meche claims that he injured his back on this date while lifting a hatch cover to check the oil on the vessel. Meche alleged that stormy conditions caused a five foot wave to hit the vessel and throw him over a railing.

Meche filed suit against Key (Meche's employer and the owner of the vessel) and Doucet (Meche's supervisor and the toolpusher on the rig under tow at the time of Meche's injury). Meche asserted claims under the Jones Act and general maritime law, including a claim for maintenance and cure, against both Defendants. Key and Doucet denied that the incident ever occurred and argued that Meche forfeited his right to maintenance and cure by lying about his preexisting spinal injuries on his pre-employment application and medical questionnaire.

The district court held a bench trial and issued findings of fact and conclusions of law. The court first found that Meche's testimony that he was thrown over the railing by a five foot wave was incredible because it conflicted with his contemporaneous descriptions of the incident, which all stated that he

2

had strained his back lifting a hatch cover to check the vessel's oil. The court also found that the weather and seas were calm at the time of Meche's injury, which further undermined Meche's testimony. Consistent with its finding that Meche merely strained his back while lifting the hatch cover, the district court concluded that Defendants were not negligent and that the vessel was not unseaworthy.

However, the court found that Meche aggravated his preexisting spinal injury when he lifted the hatch cover on the vessel. The court therefore ruled that Meche could recover maintenance and cure from both Key and Doucet.

The court rejected Defendants' argument that Meche forfeited his right to maintenance and cure by lying about his preexisting medical conditions on his pre-employment questionnaire. The court found that Key "did not require a pre-employment medical examination or interview." The court also found that "Meche did not consider his pre-existing condition to be a matter of importance." As a result, the district court concluded that "Meche did not intentionally conceal his medical history" and was therefore entitled to maintenance and cure.

The court further concluded that Key and Doucet had wrongfully refused to pay Meche maintenance and cure in bad faith. The court accordingly awarded Meche punitive damages and attorney's fees against both Defendants. Finally, the court awarded Meche pre-judgment interest, post-judgment interest, and costs.

Meche then appealed, and Key and Doucet cross-appealed.

No. 14-30032

II.

"The standard of review for a bench trial is well established: Findings of fact are reviewed for clear error and legal issues are reviewed *de novo*."[1] "A finding is clearly erroneous if it is without substantial evidence to support it, the court misinterpreted the effect of the evidence, or this court is convinced that the findings are against the preponderance of credible testimony."[2] "A district court finding may also be disregarded if it is infected by legal error."[3]

III.

Before turning to the merits of Meche's substantive claims, we must first consider Meche's argument that the district court impermissibly relied on evidence outside the record to evaluate his credibility. As noted above, the district court found that Meche provided multiple inconsistent accounts of the events surrounding his June 20, 2008 injury. In a recorded statement to a Key employee the day after the injury, Meche stated that he had strained his back while lifting a hatch cover. Meche's incident report to Key from that date corroborates his initial statement that he merely strained his back, as does his statement to his physician on that date. By contrast, Meche recounted a very different story at trial: that the vessel turned against a five foot wave in severe weather, which threw him over a railing. Meche told his son, Bertrand, a third story: that the hatch fell on him and injured his back.

No one witnessed Meche's injury. Therefore, the district court's determination of what happened on June 20, 2008 depended entirely upon

---

[1] *Aransas Project v. Shaw*, 756 F.3d 801, 813 (5th Cir.), *reh'g denied*, --- F.3d ----, 2014 WL 7172014 (5th Cir. Dec. 15, 2014) (quoting *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 601 (5th Cir. 2000)).

[2] *Id.* (quoting *Petrohawk Props., L.P. v. Chesapeake La., L.P.*, 689 F.3d 380, 388 (5th Cir. 2012)).

[3] *Id.* (citing *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 196 (5th Cir. 1998)).

No. 14-30032

Meche's credibility. Because of "Meche's conflicting accounts of the unwitnessed accident and the inconsistencies in his various statements and testimony," the district court had "serious doubts about whether or not an accident occurred and about his claims of negligence on the part of [Key]." The court accordingly found that "the only consistency in Meche's statements and testimony related to the incident is that . . . he felt a pain in his lower back while raising a hatch cover on the M/S MISS CATHERINE to perform routine maintenance."

Meche argues that the district court should not have relied on Bertrand's statement that the hatch fell on Meche when evaluating Meche's credibility because the parties did not introduce Bertrand's deposition testimony at trial. We conclude that the court's finding that Meche merely strained his back while lifting a hatch cover is not clearly erroneous because, as described above, the record evidence supporting this finding is overwhelming even without Bertrand's deposition testimony.

IV.

Meche also argues that the district court "erroneously relied on weather reports that calculated weather in the wrong area," rather than at the location where Meche sustained his injury. The district court, relying in part on the expert testimony of meteorologist Rob Perillo, made the following factual finding: "Based on the buoy reports and forecasts for June 20, 2008, winds were light and variable 5-10 knots and seas 1-2 feet." This finding belied Meche's assertion that a five foot wave tossed him over a railing during a severe storm, and supported the court's finding that Meche merely strained his back while lifting a hatch cover on the vessel.

We reject Meche's challenge. Meche did not establish at trial that Perillo measured the weather at an incorrect location. To the contrary, Perillo testified

5

No. 14-30032

on redirect examination that his analysis would cover the area where Meche's injury occurred. The district court was consequently entitled to give Perillo's testimony whatever weight it deemed appropriate.

Moreover, the trial record contains other evidence that the weather was calm at the time and place Meche sustained his injury, namely the nearly contemporaneous incident report and another meteorologist's expert report tendered by Defendants. The district court's findings regarding the weather and condition of the seas at the time and location of the incident are therefore not clearly erroneous.

V.

Meche argues next that the vessel was unseaworthy in a number of respects, and that the district court's contrary finding is clearly erroneous. He first argues that the vessel was unseaworthy because it was inadequately lit. He contends that "[t]he lack of lights specifically prevented [him] from seeing the ocean and any wave action." He asserts that, if he had "been able to see the waves[,] he could have braced himself and not injured his back by holding the hatch." Given the district court's finding that Meche was not injured by the claimed wave action, Meche's purported inability to see the waves in the darkness is immaterial. The district court therefore did not err by rejecting this claim.

Meche next argues that the vessel was unseaworthy because Doucet ordered him to lift the hatch by himself. He asserts that lifting the hatch was a two-person job. The district court specifically found that "[l]ifting the hatch covers was a one man operation which [Meche] performed daily as part of his job duties as the vessel captain," and that there was nothing unreasonably dangerous about lifting the hatch. The trial record supports the district court's finding. Thus, Doucet's alleged order that Meche lift the hatch by himself did

not render the vessel unseaworthy. The district court's reasonable finding that lifting the hatch covers was a routine, one-person job also resolves Meche's related claim that Doucet should have supervised Meche as he performed the task.

Finally, Meche contends that the vessel was unseaworthy because it was leaking oil. "Had the engine not excessively leaked oil," he argues, he "would not have been required to service it on every vessel use," and therefore would not have sustained an injury on June 20, 2008. However, Meche's injury was not "a direct result or a reasonably probable consequence" of the leaking oil.[4] Meche was injured not by the oil itself, but by straining his back lifting the hatch. As explained above, the district court reasonably found that there was nothing unreasonably dangerous about lifting the hatch. Thus, even if the leaking oil required Meche to lift the hatch more often, it did not render the vessel unseaworthy.

Thus, the district court properly ruled against Meche on all of his unseaworthiness claims.

## VI.

Similarly, the district court's finding that Defendants were not negligent is fully supported by the record. Given the mechanism of the injury – lifting a hatch cover – the district court's conclusion that the routine task of lifting a hatch cover to check the oil did not raise an inference of negligence on the part of Defendants is fully supported.[5]

---

[4] *See Phillips v. W. Co. of N. Am.*, 953 F.2d 923, 928 (5th Cir. 1992) (quoting *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1354 (5th Cir 1988)).

[5] Although the district court based its judgment on its finding that Meche "was not ordered to check the oil and . . . it was his decision to do so," we may affirm a judgment following a bench trial upon any basis supported by the record. *Mandel v. Thrasher (In re*

No. 14-30032

## VII.

We next consider whether the district court erred by awarding Meche maintenance and cure. "Maintenance and cure is a contractual form of compensation afforded by the general maritime law to seamen who fall ill or are injured while in the service of a vessel."[6] "Maintenance is a daily stipend for living expenses," whereas "cure is the payment of medical expenses."[7]

> The vessel owner's obligation to provide this compensation does not depend on any determination of fault, but rather is treated as an implied term of any contract for maritime employment.[8] A seaman may recover maintenance and cure even for injuries or illnesses pre-existing the seaman's employment unless that seaman knowingly or fraudulently concealed his condition from the vessel owner at the time he was employed.[9]

## A.

We must first vacate the maintenance and cure award against Doucet. To reiterate, Doucet was Meche's immediate supervisor and the toolpusher on duty on the rig under tow at the time of Meche's injury. It is hornbook law that the maintenance and cure duty extends only to the seaman's employer, or, in some cases, to the vessel *in rem*.[10] Because Doucet was not Meche's employer, he cannot be liable for maintenance and cure. It follows that we

---

*Mandel)*, 578 F. App'x 376, 382, 385 (5th Cir. 2014) (citing *United States v. Chacon*, 742 F.3d 219, 220 (5th Cir. 2014)).

[6] *Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 212 (5th Cir. 2006) (citing *McCorpen v. Cent. Gulf S.S. Corp.*, 396 F.2d 547, 548 (5th Cir. 1968)).

[7] *Lodrigue v. Delta Towing, L.L.C.*, No. Civ.A.03–0363, 2003 WL 22999425, at *6 n.51 (E.D. La. Dec. 19, 2003) (citing *Guevara v. Maint. Overseas Corp.*, 59 F.3d 1496, 1499 (5th Cir. 1995), *abrogated on other grounds by Atl. Sounding Co. v. Townsend*, 557 U.S. 404 (2009)).

[8] For that reason, we reject Defendants' argument that the district court's ruling on Meche's negligence claim requires us to vacate the maintenance and cure award.

[9] *Jauch*, 470 F.3d at 212 (citing *McCorpen*, 396 F.2d at 548).

[10] *See* GILMORE & BLACK, THE LAW OF ADMIRALTY 284-87 (2d ed. 1975); BENEDICT ON ADMIRALTY § 42, 4-5 (7th ed. 2013); FRANK L. MARAIST ET AL., ADMIRALTY 221 (6th ed. 2010).

No. 14-30032

must vacate the award of punitive damages, attorney's fees, pre- and post-judgment interest, and costs against him as well.

## B.

We next consider whether the district court properly held Key liable to Meche for maintenance and cure. In *McCorpen v. Central Gulf Steamship Corp.*, we held that a seaman who "knowingly fail[s] to disclose a pre-existing physical disability during his [or her] pre-employment physical examination" may not recover maintenance and cure.[11] Key argues that the *McCorpen* rule precludes Meche from obtaining maintenance and cure in this case. For the following reasons, we agree.

## 1.

> In order to establish a *McCorpen* defense, an employer must show that (1) the claimant intentionally misrepresented or concealed medical facts; (2) the non-disclosed facts were material to the employer's decision to hire the claimant; and (3) a connection exists between the withheld information and the injury complained of in the lawsuit.[12]

However,

> [i]n cases involving a pre-existing illness or other disability, the courts have made a distinction between nondisclosure and concealment. Where the shipowner does not require a pre-employment medical examination or interview, the rule is that a seaman must disclose a past illness or injury only when in his own opinion the shipowner would consider it a matter of importance. . . . On the other hand, where the shipowner requires a seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical

---

[11] 396 F.2d at 548.
[12] *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005) (citing *McCorpen*, 396 F.2d at 548-49).

facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure.[13]

Thus, in the nondisclosure context, the defendant must prove that the plaintiff subjectively believed that her employer would deem her medical condition a matter of importance.[14] The intentional misrepresentation/concealment standard, by contrast, is purely objective.[15] Our task is to decide which of the two standards applies in this case.

The district court found that Key "did not require a pre-employment medical examination or interview," and therefore applied the subjective nondisclosure standard. The court found that, "because [Key] never questioned Meche about any medical problems, but rather allowed him to continue working as a boat captain just as he had done for [his prior employer, Moncla Marine ("Moncla")] since 2006, Meche did not believe [Key] considered his existing medical problems a matter of importance." As a result, the court concluded that Meche could recover maintenance and cure.

Key argues that the district court should instead have applied the objective concealment standard. Although Key did not subject Meche to a pre-employment examination or interview, its predecessor, Moncla, did. Several months after Moncla hired Meche, Key purchased Moncla's marine division and thereby "acquired all of its assets and all of its liabilities." After reviewing Moncla's pre-employment medical examination protocols and deeming them sufficient, Key hired Meche, along with Moncla's other former employees, without subjecting them to updated medical examinations.[16] Key therefore

---

[13] *McCorpen*, 396 F.2d at 548-49.

[14] *See Brown*, 410 F.3d at 174 (quoting *Vitcovich v. Ocean Rover O.N.*, No. 94-35047, 106 F.3d 411, 1997 WL 21205, at *3 (9th Cir. Jan. 14, 1997)).

[15] *See id.* (quoting *Vitcovich*, 1997 WL 21205, at *3).

[16] At trial, a Key employee described the acquisition process as follows:

No. 14-30032

argues that a misrepresentation to Moncla is tantamount to a misrepresentation to Key for the purposes of the *McCorpen* defense.

We agree.[17] As Key persuasively argues, it makes little economic or logical sense to require a successor company to reexamine its predecessor's employees solely for the purpose of avoiding maintenance and cure liability for their previously concealed medical conditions.[18] This is especially true when, as here, the predecessor has recently received an application for employment and conducted a thorough medical examination of the seaman, and the successor relied on the seaman's representations on the application and questionnaire when deciding to retain him.

More importantly, an intervening asset sale does not reduce the risk of injury to the seaman or to others resulting from the injured seaman's presence on the ship. "Employers need to be certain that each employee is physically

_____

When we purchased the Moncla business, we brought all of our human resources personnel and our operations personnel into the – into what was the Moncla facility at that point in time . . . . We brought the personnel in, in shifts, and went through an on-boarding process where we completed the necessary documentation for our payroll processes, essentially.

During our due diligence prior to the purchase of Moncla's operations, we had assessed the training that Moncla was performing at the time, we had assessed their drug and alcohol testing protocols, and we had assessed their pre-employment physical capacity assessments, and we had determined that those were closely aligned with what Key was performing, so we had essentially accepted those such that we had them complete the necessary paperwork, put them in our payroll, and then brought them on essentially where is, as is, and made them Key employees.

[17] *See Lodrigue v. Delta Towing, L.L.C.*, No. Civ.A.03–0363, 2003 WL 22999425, at *1-2, *10 (E.D. La. Dec. 19, 2003) (applying objective concealment standard and holding that seaman intentionally concealed medical information from defendant where (1) prior employer conducted medical examination; (2) plaintiff failed to disclose medical facts to prior employer; and (3) defendant acquired prior employer's assets and employees without conducting new medical examinations).

[18] After all, a dishonest seaman who previously concealed his or her medical information on a pre-employment questionnaire is unlikely to volunteer that information during a subsequent reexamination.

11

No. 14-30032

able to do the work, not only to protect the employer from liability, but also to protect the employees. This is the purpose of the preemployment health questionnaire, and of the *McCorpen* defense."[19]

Meche's arguments that an intervening asset sale should render the *McCorpen* defense inapplicable because the successor employer did not itself conduct a pre-employment medical examination are unpersuasive. He claims that "allow[ing] a current employer to rely on previous employer's [sic] medical examination or history or physical would effectively punish a seaman for his entire life for making a single mistake." That concern is unfounded. The rule we announce today only applies when a company purchases the division and keeps the predecessor's seamen in its employ. It would not, for example, punish a seaman who leaves his or her employer for an entirely unrelated company.

Therefore, an intervening asset sale does not automatically relieve a seaman from the consequences of his or her prior intentional concealment of material medical information. Because Moncla subjected Meche to a pre-employment medical examination, and because Key acquired Moncla shortly thereafter and relied on its prior medical examination when deciding to retain Meche, Key is entitled to the benefit of the *McCorpen* defense based on the representations Meche made in his employment application to Moncla.[20] The district court should therefore have applied the objective intentional concealment standard, not the subjective nondisclosure standard.

2.

"[W]here findings are infirm because of an erroneous view of the law, a remand is the proper course unless the record permits only one resolution of

---

[19] *Brown,* 410 F.3d at 175.
[20] *See Lodrigue,* 2003 WL 22999425, at *1-2, *10.

12

No. 14-30032

the factual issue."[21] For the following reasons, the trial record unequivocally establishes that Key satisfied all three elements of the *McCorpen* defense, so we need not remand for additional factual findings.

a.

It is clear that Meche "intentionally misrepresented or concealed medical facts."[22] The intentional concealment prong of the *McCorpen* defense does not require subjective intent to conceal.[23] The employer need only show that the seaman "[f]ail[ed] to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information."[24]

Meche clearly concealed information about his prior spinal injuries from Moncla, and, by extension, from Key. The district court found that Meche sustained three prior work-related low back and neck injuries between 1984 and 1994, before he applied to work for Moncla. Meche received disability payments and sued his former employers for damages arising from these three injuries. Meche settled one of these lawsuits for $140,000.00 and another lawsuit for $30,000.00. Thus, Meche was clearly aware of his preexisting spinal conditions at the time he applied to work for Moncla.

Meche's November 2006 pre-employment medical history questionnaire for Moncla nevertheless falsely states that he had not previously sustained "any low back injuries or trouble with [his] low back" or any "illness, injury, or claim arising out of [his] employment." Meche further swore on that

---

[21] *See Pullman-Standard v. Swint*, 456 U.S. 273, 292 (1982) (citing *Kelley v. S. Pac. Co.*, 419 U.S. 318, 331-32 (1974)).

[22] *See Brown*, 410 F.3d at 171 (citing *McCorpen v. Cent. Gulf S.S. Corp.*, 396 F.2d 547, 548-49 (5th Cir. 1968)).

[23] *Id.* at 174 (quoting *Vitcovich v. Ocean Rover O.N.*, No. 94-35047, 106 F.3d 411, 1997 WL 21205, at *3 (9th Cir. Jan. 14, 1997)).

[24] *Id.* (quoting *Vitcovich*, 1997 WL 21205, at *3).

questionnaire that he did not "take any routine medication; prescribed or over the counter," even though he routinely used and filled prescriptions for hydrocodone. Meche signed his name on the questionnaire below a notice admonishing him that his "failure to answer truthfully any questions about previous injuries, disabilities, or other medical conditions may result in forfeiture of worker[']s compensation benefits."

Meche argues that he did not intentionally conceal his medical history from Moncla because he did not personally complete the written medical questionnaire. Rather, the district court found that Meche's daughter-in-law, Lesly,

> filled out the Moncla employment questionnaire because Meche doesn't read and write very well. Lesly Meche filled out the questionnaire for Meche and also filled out some of the paperwork at his physical examination. She began asking Meche the answers to the questions but before she finished, he was called to go for medical testing. She finished answering the questions herself and when Meche returned, he signed the questionnaire without reading it. She did not know whether or not Meche had neck or back problems.

Meche "signed the [questionnaire] under the statement declaring that all responses on the application were correct. Therefore, whether he personally checked 'No' to the questions about his prior injuries is inconsequential; by signing the final oath on the application, he averred that the information on the application was correct."[25] Because Meche in actuality "knew that the information on the application was not correct," Meche intentionally concealed his prior injuries as a matter of law.[26]

---

[25] *Caulfield v. Kathryn Rae Towing*, CIV. A. No. 88-5329, 1989 WL 121586, at *2 (E.D. La. June 6, 1989).

[26] *Id.*

No. 14-30032

We acknowledge that a seaman's failure to disclose his or her medical history on a pre-employment questionnaire does not necessarily amount to intentional concealment when the seaman lacks the requisite literacy skills to understand and complete the questionnaire.[27] Although the district court found that Meche "doesn't read and write very well," it did not find, and the record does not establish, that he lacked the literacy skills necessary to read and review Lesly's responses before swearing that her responses were correct. To the contrary, Meche admitted at trial that he personally filled out a different medical form for another employer detailing his prescription history several months before applying to work for Moncla. Meche's ability to understand what he was signing is clear from the record. Thus, his concealment of his medical history was intentional for the purposes of the *McCorpen* defense.

Meche also argues that he did not intentionally conceal his medical history because the district court found that he orally disclosed his past injuries and prior lawsuits to a Moncla representative before Moncla hired him. We hold that if a seaman intentionally provides false information on a pre-employment medical questionnaire and certifies that the information therein is true and correct, that seaman may not later argue that his concealment was not intentional based on his statement, which the employer disputes, that he verbally disclosed medical information that contradicted the written questionnaire.[28]

---

[27] *See McCorpen*, 396 F.2d at 549-50 (citations omitted); *Olympic Marine Co. v. Credeur*, Civ. A. No. 92-2062, 1992 WL 345322, at *2 (E.D. La. Nov. 10, 1992); *Bychurch v. Atl. Int'l Ltd.*, CIV. A. No. 89-0723, 1989 WL 113927, at *1 (E.D. La. Sept. 25, 1989); *Caulfield*, 1989 WL 121586, at *2.

[28] *See Hughes v. Shaw Envtl., Inc.*, Civil Action No. 11-494, 2012 WL 729891, at *2-3 (E.D. La. Mar. 6, 2012); *Russell v. Seacor Marine, Inc.*, No. Civ.A. 00-339, 2000 WL 1514712, at *2 (E.D. La. Oct. 10, 2000).

No. 14-30032

b.

Likewise, Key established at trial that the non-disclosed medical facts were material to its decision to retain Meche as an employee after it acquired Moncla's marine division.[29] Although the district court noted Meche's testimony that he told "everything" about his preexisting spinal condition to Michael Martens, the human resources representative at Moncla who hired Meche,[30] the record shows that Meche also testified that Martens said Meche needed to pass his physical to be hired. The record does not reflect that Meche disclosed his prior medical history to the doctor performing his physical. Therefore, we cannot conclude from this evidence that Meche's prior history was immaterial to the hiring decision.

Furthermore, the trial record contains no competent evidence that Key knew of Meche's medical condition but nevertheless opted to hire him.[31] Nor does the record suggest that Key knew of Moncla's agreement to hire Meche notwithstanding his prior spinal injuries. To the contrary, the record establishes that Key did not know of Meche's prior injuries, and would not have hired him if it did. Meche's "history of back injuries is the exact type of information sought by employers like [Key]" when deciding whether to hire a seaman.[32] "The fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to the applicant's physical ability to perform his job duties, renders the information material

---

[29] *Brown*, 410 F.3d at 171 (citing *McCorpen*, 396 F.2d at 548-49).

[30] *Cf. Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 212 (5th Cir. 2006) ("If the vessel owner would have employed the seaman even had the requested disclosure been made, concealment will not bar the seaman's recovery of maintenance and cure.").

[31] Meche insists that a human resources representative who worked for both Key and Moncla knew about Meche's condition, but that employee did not participate in either Key's or Moncla's decision to hire Meche.

[32] *Brown*, 410 F.3d at 175.

No. 14-30032

for the purpose of this analysis."[33] Key relied on Moncla's employment application, which specifically asked Meche about his preexisting condition and ultimately listed Meche as "Employable Without Accommodation," when deciding to hire him. Thus, Meche concealed material information from Key.

c.

Finally, "a connection exists between the withheld information and the injury complained of in the lawsuit,"[34] because the district court found that Meche "aggravated his pre-existing lumbar illness when he lifted the hatch cover on the M/V MISS CATHERINE on June 20, 2008." Therefore, Key unequivocally satisfied the causation element of the *McCorpen* defense at trial.[35]

Because Key established all three elements of its *McCorpen* defense, we vacate the maintenance and cure award against Key, as well as the award of pre- and post-judgment interest, costs, punitive damages, and attorney's fees.[36]

VIII.

In sum, we affirm the district court's judgment to the extent the court rejected Meche's Jones Act negligence and unseaworthiness claims against

---

[33] *Id.*

[34] *Id.* at 171 (citing *McCorpen v. Cent. Gulf S.S. Corp.*, 396 F.2d 547, 548-49 (5th Cir. 1968)).

[35] *See id.* at 176.

[36] *See Boudreaux v. Transocean Deepwater, Inc.*, 721 F.3d 723, 728 (5th Cir. 2013) (citing *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir. 1987), *abrogated on other grounds by Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496 (5th Cir. 1995)) (holding that "an employer is entitled to investigate a claim for maintenance and cure[,]" including the applicability of the *McCorpen* defense, "before tendering any payments to the seaman – without subjecting itself to liability for . . . punitive damages.").

No. 14-30032

Key and Doucet. We vacate the awards against Doucet and Key in their entirety and render judgment in favor of Key and Doucet.

AFFIRMED in part, VACATED in part, and JUDGMENT RENDERED for Key and Doucet.