

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-20-00499-CV

**WEEKS MARINE COMPANY, LLC**,
Appellant

v.

David **LANDA**,
Appellee

From the 381st Judicial District Court, Starr County, Texas
Trial Court No. DC-20-197
Honorable Jose Luis Garza, Judge Presiding

Opinion by:     Lori I. Valenzuela, Justice

Sitting:         Luz Elena D. Chapa, Justice
                Liza A. Rodriguez, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: June 30, 2021

REVERSED AND RENDERED

The underlying lawsuit is for personal injuries sustained by appellee, David Landa, during his employment with appellant, Weeks Marine Company, LLC ("Weeks").[1]  After the trial court denied Weeks's special appearance, Weeks filed this appeal.  We reverse and render judgment dismissing Landa's claims against Weeks for lack of personal jurisdiction.

---

[1] The style of Weeks's briefing on appeal is "Weeks Marine Company, LLC."  However, in a footnote in its brief, Weeks states that the party filing this appeal is Weeks Marine, Inc., which was improperly named as Weeks Marine Company, LLC in the caption of the trial court's order.

**BACKGROUND**

At the time of the incident, Landa was employed on a crane barge performing dredging operations in the state of New York "one mile out in the Atlantic Ocean, off the coast of the West Hampton Dunes." Landa alleged that as the work crew attempted to move dredge pipe, a large swell knocked him down where he got caught under a moving dredge line, dragged across the barge, and severely injured.

Landa sued Weeks under the Jones Act[2] and general maritime law for negligence and failure to provide the maintenance and cure owed to him as a seaman. He alleged Weeks, a Jones Act employer, had a non-delegable duty to provide a reasonably safe place to work; Weeks breached that duty; and Weeks's negligence was a cause, in whole or in part, of his damages. Landa also alleged that, as vessel owner, Weeks had an obligation to provide a seaworthy vessel, with sufficiently-staffed crew and safety equipment. He contended Weeks's vessel was unseaworthy, and such unseaworthiness was a producing cause of his damages. Lastly, Landa asserted Weeks failed to meet its obligation to provide him with maintenance and cure in Texas. He contends that Weeks was contractually obligated to provide him maintenance and cure in Texas once he was injured.

Weeks filed a special appearance and a supplemental special appearance. Weeks argued the trial court lacked personal jurisdiction over it because the case arose out of alleged injuries sustained by Landa as a result of an incident occurring in Westhampton Beach, New York and Weeks is a foreign corporation organized under the laws of the State of New Jersey with its principal place of business and company headquarters in New Jersey. Weeks maintained that

---

[2] The Jones Act provides that "[a] seaman injured in the course of employment . . . may elect to bring a civil action at law, with the right of trial by jury, against the employer. . . ." 46 U.S.C.A. § 30104.

Landa's allegations failed to establish that Weeks should be subject to either specific personal jurisdiction or general personal jurisdiction.

Following a hearing, the trial court signed a written order denying the special appearance without specifying its grounds. This accelerated interlocutory appeal ensued. *See* TEX. R. APP. P. 28.1(a); TEX. CIV. PRAC. & REM. CODE § 51.014(a)(7). On appeal, Weeks asserts the trial court lacks both specific jurisdiction and general jurisdiction over Weeks; therefore, the court erred by denying Weeks's special appearance.

## STANDARD OF REVIEW

Landa, as the plaintiff, had the initial burden of pleading sufficient allegations to invoke jurisdiction under the Texas long-arm statute. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). As the nonresident defendant, Weeks then assumed the burden of negating all bases of jurisdiction in those allegations. *Id.* "Because the question of a court's exercise of personal jurisdiction over a nonresident defendant is one of law, we review a trial court's determination of a special appearance de novo." *Id.* "When, as here, the trial court does not make findings of fact and conclusions of law in support of its ruling, we infer 'all facts necessary to support the judgment and supported by the evidence . . ..'" *Id.* (citation omitted). If the appellate record includes the reporter's record and the clerk's record [as it does here], the trial court's implied findings are not conclusive, and they may be challenged for legal and factual sufficiency of the evidence. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

## PERSONAL JURISDICTION

The Texas long-arm statute authorizes personal jurisdiction over a nonresident defendant who "does business" in Texas. *See* TEX. CIV. PRAC. & REM. CODE § 17.042. However, "the statute's broad, doing-business language reaches only as far as these federal due-process criteria permit: (1) the defendant must have established minimum contacts with the forum state, and (2)

the assertion of jurisdiction must comport with 'traditional notions of fair play and substantial justice.'" *IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 596 (Tex. 2007) (citation omitted); *see also Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945).

"The minimum contacts analysis requires purposeful availment, . . . which is the 'touchstone of jurisdictional due process': 'some act by which the *defendant purposefully avails* itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Griego*, 221 S.W.3d at 596 (citation omitted) (emphasis in original). "Purposeful availment has at least three aspects." *Id.* "First, only the defendant's forum-state contacts matter, not anyone else's." *Id.* "Second, the contacts must be purposeful, not merely random, isolated, or fortuitous." *Id.* "Third, a nonresident defendant must seek some benefit, advantage, or profit by 'availing' itself of the jurisdiction, thus impliedly consenting to its laws." *Id.*

"A nonresident defendant's forum-state contacts may give rise to two types of personal jurisdiction." *Moki Mac River*, 221 S.W.3d at 575. "[W]hen specific jurisdiction is alleged, we focus the minimum-contacts analysis on the 'relationship among the defendant, the forum[,] and the litigation.'" *Id.* at 575-76 (citation omitted). "Specific jurisdiction is established if the defendant's alleged liability 'aris[es] out of or [is] related to' an activity conducted within the forum." *Id.* at 576 (citation omitted). In contrast, "[i]f the defendant has made continuous and systematic contacts with the forum, general jurisdiction is established whether or not the defendant's alleged liability arises from those contacts." *Id.* at 575. Because both types of personal jurisdiction are at issue here, we examine each in turn.

## A. Specific Jurisdiction

"The first type of personal jurisdiction is specific jurisdiction, which is based on whether the defendant's activities in the forum state themselves 'give rise to the liabilities sued on.'" *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 67 (Tex. 2016) (citation omitted). "Broadly stated, specific jurisdiction exists when the plaintiff's claims 'arise out of' or are 'related to' the defendant's contact with the forum." *Id.* (citation omitted). Thus, specific jurisdiction has two components: the purposeful availment inquiry and the nexus between the nonresident defendant, the litigation, and the forum. *See Moki Mac River*, 221 S.W.3d at 576. Because we conclude the existence of a nexus between Weeks, the litigation, and Texas is dispositive, we do not address the purposeful availment component.

"The 'arise from or relate to' requirement lies at the heart of specific jurisdiction by defining the required nexus between the nonresident defendant, the litigation, and the forum." *Id.* at 579. "[F]or a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation." *Id.* at 585. Thus, "the relationship must arise out of contacts that the 'defendant himself' creates with the forum State," and the "analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 284-85 (2014). "[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 286. "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* (citation omitted).

## 1. Landa's negligence claim

Landa alleges his injuries resulted from the negligence of a fellow employee, Luis Mijares, and from Weeks's failure to provide a safe workplace because it did not properly screen, hire, and train its employees, specifically, here, Mijares. According to Landa, both he and Mijares reside in Texas and were recruited in Texas by Weeks. At the time of the accident, both men were part of a crew performing dredge-related activities on offshore crane barges that should have been tied together to limit the impact of incoming ocean swells. Landa contends Mijares was responsible for securing the barges together. He contends Mijares failed to secure the barges together and, as a result, the barges rocked "violently" when swells arrived. One such swell knocked Landa to the ground and under a dredge line leading to his injuries. Landa also contends Mijares was not properly screened or trained and had Weeks properly screened, hired, and trained its employees, this accident likely would not have occurred.

The operative facts of Landa's suit concern whether Mijares performed his job in a negligent manner and whether he was properly trained to do his job. The events on the barge and the work performed by its crew "will be the focus of the trial, will consume most if not all of the litigation's attention, and the overwhelming majority of the evidence will be directed to that question." *Id.* ("Only after thoroughly considering the manner in which the hike was conducted will the jury be able to assess the Druggs' misrepresentation claim."). As to Landa's claim regarding how Weeks recruits, hires, screens, and trains the people it employs for its dredging operations, the focus at trial will be on Weeks's employment of and training, if any, of Mijares.

Landa supported his response to Weeks's special appearance with his own affidavit. He contends neither he nor Mijares received extensive training and that before being employed, he and Mijares were interviewed over the telephone and later hired based on an "employee referral." The record, however, contains no evidence about the identity or location of this "employee

referral," Weeks's recruitment process, or the location of the individual on the other end of either telephone call. They were both living in Texas at the time. Landa contends he accepted the terms of his employment while he was in Texas, he took a physical examination and drug test in Texas, he was paid via direct deposit to his Texas bank account, he once worked on a project in Galveston, Texas, and he received medical care in Texas after the incident.

Weeks supported its special appearance with the affidavit of Teresa Olivo, its Occupational Injury and Claims Manager. Olivo attested that Weeks maintains fourteen regional offices throughout the United States and Canada and its sole regional office in Houston, Texas operates the company's Construction Division, which did not employ either Landa or Mijares. She stated both men worked for Weeks's Dredging Division located in Covington, Louisiana and all employment and benefits decisions for seamen are made from the Louisiana office or Weeks's headquarters in New Jersey. After the men were hired, they joined the International Union of Operating Engineers Local 25 Marine Division ("Union"), which is headquartered in and operates out of New Jersey. The terms of the men's employment with Weeks are governed by a collective bargaining agreement between Weeks and the Union.

Olivo stated Mijares "received orientation training at Weeks Marine's regional Dredging Division office in 2015 in Louisiana [and] also received on-the-job work and safety training on his various job sites." According to Olivo, Mijares "worked on various dredging projects, including projects in South Carolina, New Jersey, Alabama, Louisiana, and New York."

We conclude specific jurisdiction does not exist for Landa's negligence claims because there is no nexus between Weeks, the litigation, and Texas. Landa's claims arise out of alleged tortious acts committed by Mijares while the men were working offshore in New York. Evidence that Landa accepted the terms of his employment while he was in Texas, took a physical and drug test in Texas, was paid via direct deposit to his Texas bank account, he once worked on a project

in Galveston, Texas, and he received medical care in Texas after the incident also does not support specific jurisdiction. Our analysis under the nexus component looks to Weeks's contacts with Texas itself, not Weeks's contacts with persons who reside there.

"This is an action for damages for personal injuries and related losses for an incident occurring outside of [Texas]; it is not a wage dispute claim. Consequently, any payment of wages to [Landa] or medical expenses in [Texas] by [Weeks] are not relevant with respect to [the personal injury aspect of] this litigation and cannot serve as a basis for jurisdiction." *Burnes v. Trinity Mgmt. Group, Inc.*, 2:11CV241KS-MTP, 2012 WL 774951, at *7 (S.D. Miss. Mar. 8, 2012). Finally, although Landa may dispute whether Weeks adequately trained Mijares, Weeks's evidence that any such training would occur either in Louisiana or at a specific jobsite is undisputed. Because Weeks's contacts with Texas are not substantially connected to the operative facts of Landa's negligence claims, the trial court erred in denying the special appearance with regard to that claim if it did so on the basis of specific jurisdiction.

## 2. Landa's maintenance and cure claim

Landa alleged Weeks denied and/or unreasonably delayed his maintenance and cure payments and/or has paid maintenance in an insufficient amount. He also asserted Weeks failed to provide him with the specialized care he needed for his extensive injuries.

"Maintenance and cure is a contractual form of compensation afforded by the general maritime law to seamen who fall ill or are injured while in the service of a vessel." *Meche v. Doucet*, 777 F.3d 237, 244 (5th Cir. 2015) (citation and internal quotations omitted). "There is an ancient duty of a vessel to provide maintenance and cure to a seaman who is injured or falls ill while in the service of the ship." *Springborn v. Am. Commercial Barge Lines, Inc.*, 767 F.2d 89, 94 (5th Cir. 1985). "Maintenance is a daily stipend for living expenses, [and] cure is the payment of medical expenses." *Meche*, 777 F.3d at 244 (citation and internal quotations omitted). The

duty to provide maintenance and cure is "unqualified: it cannot be contracted away by seamen, does not depend on the fault of the employer, and is not reduced due to the seaman's contributory negligence." *Boudreaux v. Transocean Deepwater, Inc.*, 721 F.3d 723, 725–26 (5th Cir. 2013).

Landa asserts that, after being injured, he returned to Texas where he is "entitled contractually" to receive maintenance and cure from Weeks; Weeks is "contractually obligated to perform this contractual right in Texas"; and this agreement "was made in Texas to necessarily be carried out in Texas." Thus, Landa's argument that the trial court has specific jurisdiction over Weeks with regard to his maintenance and cure claim is premised on his contention that he is now entitled to receive his maintenance and cure payments in Texas.

Landa relies on several cases for the proposition that hiring him in Texas and paying his salary and maintenance and cure in Texas are sufficient to establish specific jurisdiction. "The minimum contacts prong for specific jurisdiction can be satisfied by a single act if the nonresident defendant 'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefit and protection of its laws.'" *Guyton v. Pronav Ship Mgmt., Inc.*, 139 F. Supp. 2d 815, 818 (S.D. Tex. 2001) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 528 (1985)). However, the holdings in the cases on which Landa relies were relevant to whether the nonresident defendant had minimum contacts with the forum state based on purposeful availment.[3] "For specific-jurisdiction purposes, purposeful availment has no jurisdictional

---

[3] *See e.g., Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 882-83 (5th Cir. 1993) (concluding nonresident employer did "business in Mississippi" because it advertised job openings in newspapers in Houston, Texas, Lafayette, Louisiana, and Mobile, Alabama; all these newspapers were distributed in Mississippi; employer held a meeting in Laurel, Mississippi for the purpose of recruiting employees and hired Coats at that meeting; after Coats's injury, he was replaced with another Mississippi resident who had attended the meeting in Laurel; employer hired Coats under terms that contemplated future contacts with Mississippi; after Coats was injured, employer flew him to Mississippi and paid for his medical treatment there); *Potts v. Cameron Offshore Boats, Inc.*, 401 F. Supp. 2d 733, 737 (S.D. Tex. 2005) (finding nonresident defendant established minimum contacts by purposely engaging in conduct directed toward the forum state "such that [the defendant] should reasonably anticipate being haled into court there" by purposefully availing itself of the privilege of conducting duties within the forum state; therefore, court had specific jurisdiction "over a controversy stemming from the employment of a Texas worker hired through the efforts of a Texas recruiting

relevance unless the defendant's liability arises from or relates to the forum contacts." *Moki Mac River*, 221 S.W.3d at 579 (holding specific jurisdiction "analysis has two co-equal components"). The U.S. Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden*, 571 U.S. at 284. The component we focus on here is whether Weeks's "suit-related conduct . . . create[s] a substantial connection with" Texas. *Id.* Thus, we examine whether the relationship arises out of contacts that Weeks itself creates with Texas. *See id.*

Weeks's relationship with Landa, "standing alone, is an insufficient basis for jurisdiction." *Id.* at 286. Due process requires that Weeks be haled into a Texas court based on its "own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts [it] makes by interacting with other persons affiliated with the State." *Id.* "Paying maintenance and cure in another state is a purposeful contact with that state, although that action alone cannot sustain personal jurisdiction." *Id.*; *see also Stewart v. Luedtke Eng'g Co.*, C 05-3467 SBA, 2006 WL 334644, at *4 (N.D. Cal. Feb. 10, 2006) (holding, "mere fact that LECO fulfilled its obligations under the Union Contract relating to maintenance and cure while Plaintiff was residing in California is not sufficient to establish personal jurisdiction over LECO in California).

Although we accept as true Landa's contention that Weeks is contractually obligated to pay him maintenance and cure while he is in Texas, none of the activity surrounding his alleged injury occurred in Texas and "[t]he mere fact that [he] ended up in [Texas] after his alleged injury is not sufficient to justify an exercise of specific jurisdiction over" Weeks. *See Ortiz v. Wilmington Tr. Co.*, 91-00573-DAE, 1992 WL 474579, at *3 (D. Haw. June 2, 1992). Landa "cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285. "Rather, it is [Weeks's]

---

company when the worker was treated in Texas, had his paychecks sent to a Texas company for some period of his employment, and received maintenance and cure payments in Texas.")

conduct that must form the necessary connection with [Texas] that is the basis for its jurisdiction over [Weeks]." *Id.* Weeks's contacts with Texas are not substantially connected to the operative facts of Landa's maintenance and cure claim. Therefore, the trial court erred in denying the special appearance with regard to that claim if it did so on the basis of specific jurisdiction.

## B. General Jurisdiction

"Although the likelihood of specific jurisdiction may increase in step with any substantial connection between the asserted claims and the forum state, the ties between the litigation itself and the forum state are irrelevant to the question of whether general jurisdiction exists." *Searcy* 496 S.W.3d at 72. "Rather, general jurisdiction relies on the defendant itself being tied up—almost entangled in a web—with the forum state." *Id.* General jurisdiction "contemplates suits where a defendant's 'continuous . . . operations within a state [are] thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.'" *Id.* at 71 (quoting *Int'l Shoe*, 326 U.S. at 318).

"[T]he general jurisdiction analysis entails a high bar." *Id.* at 72. "Accordingly, the inquiry . . . is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (citation omitted). "Continuous and systematic contacts that fail to rise to this relatively high level are insufficient to confer general jurisdiction over a nonresident defendant." *Searcy*, 496 S.W.3d at 72. "Courts do not have general jurisdiction over corporate defendants that are neither incorporated in the forum state nor have their principal place of business there, absent some relatively substantial contacts with the forum state." *Id.* Thus, "where a corporation does not have a principal place of business in Texas, is not incorporated in Texas, and where it has only limited contacts with Texas, it does not have continuous and

systematic contacts with Texas that rise to a level that renders it essentially at home in the Lone Star State." *Id.* at 78.

We limit a general jurisdiction inquiry to pre-suit contacts "consistent with the analysis to be performed which takes into consideration whether the nonresident contacts are sufficiently continuous and systematic before a suit is filed to permit the nonresident defendant to be hailed into a Texas court to answer the suit." *Accelerated Wealth, LLC v. Lead Generation & Mktg., LLC*, 04-12-00647-CV, 2013 WL 1148923, at *4 (Tex. App.—San Antonio Mar. 20, 2013, no pet.) (mem. op.). Olivo's affidavit establishes uncontroverted facts about Weeks. At the time of the incident and since that time Weeks was organized and exists under the laws of the State of New Jersey with its principal place of business and corporate headquarters in Cranford, New Jersey. Weeks provides construction, dredging, towing, heavy lift, salvage, stevedoring and tunneling services throughout North and South America, including offshore sites in the Pacific and the Atlantic Oceans. Weeks manages regional offices in New Jersey (four regional offices), Louisiana (three regional offices), Texas (one regional office), Hawaii (two regional offices), Ohio (one regional office), and Canada (three regional offices). Its sole regional office in Texas operates Weeks's Construction Division and is located in Houston. In 2019, Weeks had only twenty Texas employees out of a total of 1,629 employees. Within the last five years, eight percent of Weeks's projects have been located in Texas and it derived twelve percent of its total revenue from Texas projects. More specifically, Weeks's revenue from its Texas projects as a percentage of its total revenue amounted to ten percent in 2015, eighteen percent in 2016, eleven percent in 2017, and nine percent in 2018 and 2019.

However, merely doing business in Texas is not sufficient to make Weeks "at home" in Texas. Weeks's "contacts with Texas are typical of foreign entities with out of state principal places of business but who do business in Texas." *N. Frac Proppants, II, LLC v. 2011 NF*

*Holdings, LLC*, 05-16-00319-CV, 2017 WL 3275896, at \*24 (Tex. App.—Dallas July 27, 2017, no pet.) (mem. op.). "[T]he general jurisdiction inquiry does not 'focu[s] solely on the magnitude of the defendant's in-state contacts.'" *Daimler*, 571 U.S. at 139 n.20; *see also Int'l Shoe*, 326 U.S. at 318 ("continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity"). "General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide." *Daimler*, 571 U.S. at 139 n.20; *see also BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1554 (2017) (holding Montana court lacked general jurisdiction over BNSF; BNSF had 2,061 miles of railroad track in Montana (about six percent of its total track mileage of 32,500), employed about 2,100 workers there (less than five percent of its total work force of 43,000), generated less than ten percent of its total revenue in the State, and maintained only one of its twenty-four automotive facilities in Montana (four percent)). "A corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 571 U.S. at 139 n.20. "Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." *Id.* This "at home" standard means that the defendant's forum activities must be "comparable to a domestic enterprise" in the forum state. *Daimler*, 571 U.S. at 133 n.11. *Daimler*, however, left open the possibility "that in an exceptional case, . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139 n.19; *N. Frac Proppants*, 2017 WL 3275896, at \*23-24 (holding that maintaining a Texas agent for service of process; maintaining in Texas a small number of relatively low-level employees, out of a much larger workforce; ownership of one plant in Texas; selling about fifteen percent of its production in Texas; or not contesting personal jurisdiction in an earlier Texas lawsuit do not make a nonresident corporation "at home" in Texas and concluding this was not an exceptional case).

On this record, we conclude the evidence does not satisfy the high bar for general jurisdiction because Weeks's affiliations with Texas are not "'so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.'" *Searcy* 496 S.W.3d at 71 (citation omitted). The record before us does not support a conclusion that this is an exceptional case in which Weeks's "operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home" in Texas. *Daimler*, 571 U.S. at 139 n.19. Therefore, the trial court erred in denying the special appearance if it did so on the basis of general jurisdiction.

## CONCLUSION

For the reasons explained above, we sustain Weeks's issue on appeal. We reverse the trial court's order denying Weeks's special appearance and render judgment dismissing Landa's claims against Weeks for lack of personal jurisdiction.

Lori I. Valenzuela, Justice