KATHLEEN M. WILLIAMS, UNITED STATES DISTRICT JUDGE
*1111 THIS MATTER is before the Court on Magistrate Judge Edwin G. Torres's Report and Recommendation (DE 50) (the "Report") regarding Defendants' joint motion to dismiss the third amended complaint (DE 39). The Report recommends that Defendants' motion be granted in part. Defendant CR SpaClub at Sea, LLC filed objections to the Report. Upon an independent review of the Report, Defendant's objections, the record, and applicable case law, it is ORDERED AND ADJUDGED that:
1. The Report is AFFIRMED and the analysis contained in the Report (DE 50) is ADOPTED and incorporated herein by reference.
2. Defendants' motion (DE 39) is GRANTED IN PART as set forth in the Report.[1]
DONE AND ORDERED in chambers in Miami, Florida, this 9th day of May, 2019.
REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS
EDWIN G. TORRES, United States Magistrate Judge
This matter is before the Court on Celebrity Cruises ("Celebrity") and CR Spaclub at Sea's ("CR Spaclub") (collectively "Defendants") joint motion to dismiss Jane Doe's ("Plaintiff") demand for punitive damages. [D.E. 39]. Plaintiff responded on February 13, 2019. [D.E. 40]. Defendants filed their joint reply on February 20, 2019. [D.E. 43].[1] Therefore, Defendants' motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authority, and for the reasons discussed below, Defendants' motion to dismiss should be GRANTED in part and DENIED in part .
I. FACTUAL BACKGROUND
On or about August 24, 2017, Plaintiff was a passenger aboard the M/S Celebrity Summit , a vessel owned and operated by Celebrity. [D.E. 38]. At that time, CR Spaclub owned and operated a spa on the Summit that offered services for Celebrity's passengers. Id. Plaintiff alleges that, while she was a passenger on the Summit , a crewmember by the name of Carlos Roberto Castro Tadeo (the "Assailant") sexually assaulted and battered her. Id.
Plaintiff filed her initial, four-count complaint on August 21, 2018. [D.E. 1]. She filed an amended complaint three weeks *1112 later after a substitution of counsel. [D.E. 13]. On September 19, 2019, Plaintiff filed a second amended complaint to correct a typographical error. [D.E. 21]. Celebrity submitted its answer and affirmative defenses to the second amended complaint on October 12, 2018 [D.E. 23], and CR Spaclub did the same on December 10, 2018 [D.E. 30]. Plaintiff's underlying allegation, up until this point, was relatively straightforward and unchanged:
[t]he Assailant, after calling himself a masseuse and spa director and under the pretense of providing Plaintiff with a complimentary massage, trapped Plaintiff in a small room of the spa and intentionally persuaded Plaintiff to undress and eventually fondled her breasts and vaginal area before she was able to get away.
[D.E. 21, ¶ 17]. Plaintiff demanded compensatory damages, costs, interest, permissible attorney's fees, and other relief deemed appropriate by the Court for (1) Celebrity's negligence, (2) CR Spaclub's negligence, (3) Celebrity's strict vicarious liability, and (4) CR Spaclub's strict vicarious liability. [D.E. 21].
As discovery got underway, however, Plaintiff learned that she may not have been the Assailant's first victim. She claims she obtained a copy of the resume and application that Assailant submitted to CR Spaclub. [D.E. 35]. According to Plaintiff, during the discovery process she became aware that Assailant allegedly engaged in similar conduct while employed as a fitness instructor onboard a Carnival cruise ship in November of 2016 - roughly nine months before she claims she was assaulted.[2] Id. Based on this information, Plaintiff was granted leave to amend her complaint for a third time. [D.E. 37].
In the third amended complaint, Plaintiff added additional information about the Assailant's alleged similar conduct from November of 2016 and sought punitive damages on each of the four counts. [D.E. 38]. Defendants now seek to dismiss the claim for punitive damages because, in their words, the allegations contained in the third amended complaint do not rise to the level of "intentional wrongdoing" required to obtain such an award in the Eleventh Circuit. [D.E. 39]. We address these arguments below.
II. LEGAL STANDARD
In ruling on Defendants' motion to dismiss, the Court takes the allegations in the complaint as true and construes the allegations in the light most favorable to the Plaintiff. Rivell v. Private Health Care Systems, Inc. , 520 F.3d 1308, 1309 (11th Cir. 2008) (citing Hoffman-Pugh v. Ramsey , 312 F.3d 1222, 1225 (11th Cir. 2002) ). "When considering a motion to dismiss, all facts set forth in [Plaintiff's] complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.' " Grossman v. Nationsbank, N.A. , 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting GSW, Inc. v. Long Cnty. , 999 F.2d 1508, 1510 (11th Cir. 1993) ). A motion to dismiss under Rule 12(b)(6) "is granted only when the movant demonstrates that the complaint has failed to include 'enough facts to state a claim to relief that is plausible on its face.' " Dusek v. JPMorgan Chase & Co. , 832 F.3d 1243, 1246 (11th Cir. 2016) (quoting *1113 Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ).
"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions." Twombly , 550 U.S. at 555, 127 S.Ct. 1955 (internal citations and quotations omitted) (alteration in original). "To survive a motion to dismiss, a complaint must contain sufficient factual matter." Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " Id. (quoting Twombly , 550 U.S. at 557, 127 S.Ct. 1955 ) (alteration in original). Factual content gives a claim facial plausibility. Id. ; see also Peterson v. Atlanta Hous. Auth. , 998 F.2d 904, 912 (11th Cir. 1993) ("[A] court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it for [the plaintiff].").
III. ANALYSIS
Defendants' motion seeks to dismiss all of Plaintiff's demands for punitive damages. [D.E. 39]. However, as there is some dispute among the parties, we must first discuss when, exactly, punitive damages may be awarded under general maritime law.
According to Defendants, punitive damages are not available to Plaintiff under general maritime law "except in exceptional circumstances[,] such as willful failure to furnish a seaworthy vessel to a seaman and in those very rare instances of intentional wrongdoing." In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. on Sept. 22, 1993 , 121 F.3d 1421, 1429 (11th Cir. 1997) ; see also Crusan v. Carnival Corp. , 2015 WL 13743473, at *7 (S.D. Fla. Feb. 24, 2015) ("[T]he Court finds that Amtrak is controlling on this issue, and Plaintiffs in this action may recover punitive damages only upon a showing of intentional misconduct") (citing Terry v. Carnival Corp. , 3 F. Supp. 3d 1363, 1371-72 (S.D. Fla. 2014) ).
Plaintiff, on the other hand, argues that punitive damages are available under general maritime law when a tortfeasor's conduct is willful, wanton, or outrageous, and does not merely apply only under circumstances where there is intentional misconduct. See Atl. Sounding Co. v. Townsend , 557 U.S. 404, 424, 129 S.Ct. 2561, 174 L.Ed.2d 382 (2009). In Atlantic Sounding , the Court found (1) that punitive damages were traditionally available at common law, (2) that the common law tradition of punitive damages extends to maritime claims, and (3) that there is no evidence that claims for maintenance and cure were excluded from the general maritime rule by the Jones Act (or otherwise). See id. at 414-15, 129 S.Ct. 2561.
There has been a split among district courts in the Eleventh Circuit as to whether Atlantic Sounding abrogated Amtrak. Compare Lobegeiger v. Celebrity Cruises, Inc. , 2012 A.M.C. 202, 214 (S.D. Fla. 2011) and Doe v. Royal Caribbean Cruises, Ltd. , 2012 WL 920675, at *4 (S.D. Fla. Mar. 19, 2012) (finding that Atlantic Sounding abrogated Amtrak and that punitive damages are available in maritime personal injury actions for willful, wanton, or outrageous conduct), with Bonnell v. Carnival Corp. , 2014 WL 12580433, at *3 (S.D. Fla. Oct. 23, 2014) and Gener v. Celebrity Cruises, Inc. , 2011 WL 13223518, at *2 (S.D. Fla. Feb. 2, 2011) (finding that while Atlantic Sounding's "reasoning may be at odds with Amtrack [sic], its holding is not, and the mere reasoning of the Supreme Court is no basis for this Court to depart from clear circuit precedent").
*1114 We begin with the familiar principle that the Eleventh Circuit's decisions are binding upon the district courts within this circuit. See 11th Cir. R. 36, I.O.P. (2) ("Under the law of this circuit, published opinions are binding precedent."); see also Martin v. Singletary , 965 F.2d 944, 945 n.1 (11th Cir. 1992) (holding that "the courts in this circuit" have a duty to apply the binding precedent established by published opinions even before a mandate issues). Under the Eleventh Circuit's prior panel precedent rule, a "panel's holding is binding on all subsequent panels" - and, by extension, all district courts within the Eleventh Circuit - "unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting en banc." United States v. Archer , 531 F.3d 1347, 1352 (11th Cir. 2008) (citing Smith v. GTE Corp. , 236 F.3d 1292, 1300 n.8 (11th Cir. 2001) and Chambers v. Thompson , 150 F.3d 1324, 1326 (11th Cir. 1998) ); see also United States v. Kaley , 579 F.3d 1246, 1255 (11th Cir. 2009) (observing that courts "may disregard the holding of a prior [Eleventh Circuit] opinion only where that 'holding is overruled by the Court sitting en banc or by the Supreme Court.' "). Importantly, there is a difference between the holding in a case and its underlying reasons - meaning that, "[e]ven if the reasoning of an intervening high court decision is at odds with a prior appellate court decision, that does not provide the appellate court with a basis for departing from its prior decision." United States v. Vega-Castillo , 540 F.3d 1235, 1237 (11th Cir. 2008).
We acknowledge that the reasoning in Atlantic Sounding - that punitive damages have traditionally been available at common law for wanton, willful, or outrageous conduct and that this tradition extends to federal maritime law - appears to be inconsistent with the Eleventh Circuit holding in Amtrak that punitive damage are unavailable in maritime personal injury cases absent intentional wrongdoing. But, the holding in Atlantic Sounding did not overrule the holding in Amtrak . As Judge Williams explained in Bonnell , the issue is not whether punitive damages are available under general maritime law, but what standard of liability should apply in determining whether they may be recovered:
Plaintiff argues that, under the "broad reasoning" of Atlantic Sounding , punitive damages should be available in this action even in the absence of a showing of intentional misconduct. However, the Court believes that Atlantic Sounding's statement that "[p]unitive damages have long been an available remedy at common law for wanton, willful or outrageous conduct" was simply a general description of the circumstances in which such damages are available at common law, and was not intended to announce a bright-line standard of liability governing recovery of punitive damages in all maritime tort claims. Again, the Court notes that Atlantic Sounding addressed only the availability of punitive damages in a cause of action for maintenance and cure, and did not specifically discuss personal injury claims brought by ship passengers. Given the relatively narrow scope of the issues presented in Atlantic Sounding , the Court does not believe that holding should be read so broadly as to find it in conflict with Amtrak.
2014 WL 12580433, at *3 (footnote in original).
We agree with the reasoning in Bonnell because Amtrak did not foreclose the availability of punitive damages - only that they should be available in "exceptional circumstances," such as "those very rare situations of intentional wrongdoing." Amtrak , 121 F.3d at 1429. The Supreme Court addressed a narrower issue in *1115 Atlantic Sounding as to whether punitive damages were available as a remedy for a breach of the maritime duty of maintenance and cure. And in answering this question, the Court concluded that, because punitive damages were available under general maritime law, they are available for a maintenance and cure claim. Atlantic Sounding , 557 U.S. at 418-24, 129 S.Ct. 2561. This means that Atlantic Sounding did not overrule Amtrak because the former (1) focused exclusively on the availability of punitive damages in a cause of action for maintenance and cure, and (2) merely announced a generic description as to how punitive damages have been available at common law (i.e., for wanton, willful, or outrageous conduct). Nothing in Atlantic Sounding delineated a bright-line rule as to how that standard should be applied in all maritime tort claims. See Bodner v. Royal Caribbean Cruises, Ltd. , 2018 WL 4047119, at *5 (S.D. Fla. May 8, 2018) ( Atlantic Sounding's holding that punitive damages are available under general maritime law for the arbitrary withholding of maintenance and cure did not overrule, and is not in direct conflict with, Amtrak's holding that punitive damages are precluded in maritime personal injury claims except in exceptional circumstances[.]") (internal citation and quotations omitted).
With these principles in mind, Plaintiff may only recover punitive damages upon a showing of intentional misconduct. To demonstrate "intentional misconduct," a plaintiff must show that "the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage." Mee Indus. v. Dow Chemical Co. , 608 F.3d 1202, 1220 (11th Cir. 2010) (citing Fla. Stat. § 768.72(2)(a) ). The Eleventh Circuit has described instances of intentional misconduct as "very rare." In re Amtrak, 121 F.3d at 1429.
A. Punitive Damages for Celebrity/CR Spaclub's Negligence
To justify her demand for punitive damages on the negligence counts (Counts I and II), the third amended complaint discusses Plaintiff's injuries from her encounter with the Assailant and further alleges that Defendants "knew" the Assailant was a "sex predator" with "dangerous propensities" when they hired him - thereby "deliberately creating an environment" that put passengers at risk of being attacked by sexual predators. [D.E. 38]. Such behavior by Defendants would be sufficient to qualify as "intentional" misconduct under Eleventh Circuit precedent, which would allow Plaintiff could to recover punitive damages if proven true. See Mee Indus. , 608 F.3d at 1220 ; In re Amtrak, 121 F.3d at 1429 ; Bonnell v. Carnival Corp. , No. 13-22265-CV-WILLIAMS, 2014 WL 12580433, at *3 (S.D. Fla. Oct. 23, 2014).
To support Plaintiff's claim that Defendants' knew the Assailant had been a "sex predator" prior to his hiring - the type of knowledge that would be sufficient to qualify as "intentional" to support a claim for punitive damages - the third amended complaint alleges that the Assailant sexually assaulted a 16-year-old girl at his previous job "under the pretense of taking her measurements for a complimentary consultation/fitness analysis." [D.E. 38]. In further support of this allegation, the complaint cites a case between a former client of Plaintiff's counsel and a former employer of the Assailant as evidence that Defendants knew of the Assailant's alleged misconduct in November of 2016. See Smith v. Carnival Corp, et al. , No. 17-23630-CIV-ALTONAGA/GOODMAN (S.D. Fla. Oct. 3, 2017) (case settled for an undisclosed amount in April 2018).
*1116 When viewing these facts and the support for same alleged in the Complaint, we cannot find that Plaintiff plausibly suggests that Defendants knew the Assailant was a "sex predator," yet decided to hire him anyway. The case cited to by Plaintiff involved a lawsuit filed roughly five weeks after Plaintiff's cruise in August 2017. Thus, there exists an insufficient temporal nexus between Plaintiff's hiring by the Defendants and either (1) the alleged assault on the victim in the Smith case, or (2) Doe's alleged sexual assault here; the lawsuit that would have put Defendants on notice about the Assailant's alleged predatory behavior did not come until after Plaintiff had returned from the cruise in question. Absent actual knowledge, there can be no intentional misconduct. Mee Indus. , 608 F.3d at 1220.
Without more - and, given the fact that Plaintiff was granted leave to amend her complaint after she "received new evidence" but failed to mention any such new evidence in the third amended complaint - the allegation that Defendants had such knowledge when the Assailant was hired amounts to an assertion devoid of factual enhancement. See Iqbal , 556 U.S. at 678, 129 S.Ct. 1937. Accordingly, Defendants' motion to dismiss Plaintiff's demand for punitive damages as to Counts I & II should be GRANTED without prejudice. Plaintiff, however, should be given leave to amend the complaint.[3]
B. Punitive Damages for Celebrity's Strict Vicarious Liability
The Eleventh Circuit has unequivocally held that a cruise line is "strictly liable for crew member assaults on their passengers during [a] cruise." Doe v. Celebrity Cruises, Inc. , 394 F.3d 891, 913 (11th Cir. 2004). Plaintiff's complaint posits that she was a passenger aboard the Summit when she was "sexually assaulted and battered" by the Assailant - a crewmember - because he intentionally persuaded her to undress for a "complimentary massage" and then proceeded to "fondle[ ] her breasts and vaginal area." [D.E. 38]. Accepting these facts as true and construing the allegations in the light most favorable to the Plaintiff, and based on the special relationship the law recognizes exists between commercial carriers and its passengers, the Court finds that she has asserted enough facts to state a plausible claim for two intentional torts; namely, sexual assault and battery. See Dusek , 832 F.3d at 1246 ; Doe , 394 F.3d at 917 ("[A]n intentional tort is '[a] tort committed by someone acting with general or specific intent [and] [e]xamples include battery, false imprisonment, and trespass to land.") (citing Black's Law Dictionary at 1527 (8th Ed. 1999)) (alteration in original); Doe No. 3 v. Epstein , 2009 WL 383330, at *4-5 (S.D. Fla. Feb. 12, 2009) (surviving motion to dismiss sexual assault claim). And because Plaintiff has stated a plausible claim for sexual assault and battery by a crewmember, the law allows Plaintiff to hold Celebrity strictly liable for its crewmember's conduct. Doe , 394 F.3d at 917.
The question before us is whether these alleged intentional torts rise to the level of intentional misconduct as defined by the Eleventh Circuit to support an *1117 award for punitive damages. See Mee Indus. , 608 F.3d at 1220. We find that they do. Here, the third amended complaint alleges that the Assailant "intentionally" and deceptively persuaded Plaintiff to disrobe before he fondled her breasts and vaginal area. [D.E. 39]. Viewing the alleged facts as true and in the light most favorable to Plaintiff, it is plausible that the Assailant knew such behavior was wrong and would cause harm to Plaintiff, yet nevertheless he persisted and in doing so caused significant injury. Thus, his actions could very well rise to the level of intentional misconduct. See Mee Indus. , 608 at 1220. And because such intent would carry to Celebrity as a result of it being strictly liable for the intentional misconduct of its crewmembers, we ultimately find that it would inappropriate - at this time - to preclude Plaintiff from pursuing punitive damages on this Count, based on these allegations. Accordingly, Defendants' motion to dismiss Plaintiff's demand for punitive damages as to Count III should be DENIED .
C. Punitive Damages for CR Spaclub's Strict Vicarious Liability
As discussed above, federal maritime law provides that a common carrier is strictly liable for crewmember assaults on passengers. Doe , 394 F.3d at 893. More than a century of judicial precedent indicates that this type of liability derives from the duty of absolute protection that a common carrier owes its passengers. Id. at 904-13 ; see New Jersey Steam-Boat Co. v. Brockett , 121 U.S. 637, 645-46, 7 S.Ct. 1039, 30 L.Ed. 1049 (1887) ("[A] common carrier is bound, as far as practicable, to protect its passengers, while being conveyed, from violence committed by strangers and co-passengers, and undertakes absolutely to protect them against the misconduct of its own servants engaged in executing the contract."); New Orleans & N.E.R. Co. v. Jopes , 142 U.S. 18, 27, 12 S.Ct. 109, 35 L.Ed. 919 (1891) ("owing to the peculiar circumstances which surround the carrying of passengers...a more stringent rule of liability has been cast upon the employer, and he has been held liable although the assault was wanton and willful, and outside the scope of the employment.").
The third amended complaint does not allege that CR Spaclub is a common carrier, but rather refers to CR Spaclub as an entity "under the direction and control of Celebrity," an onboard "agent" of Celebrity who provides spa services to passengers, and/or an employer of the Assailant. [D.E. 38]. Nevertheless, the lack of a common carrier allegation against CR Spaclub is not dispositive for strict vicarious liability because CR Spaclub - an onboard agent under the control of a common carrier - shares in the duty of absolute protection owed to passengers who travel with the common carrier. See Doe , 394 F.3d at 913 (holding that the defendants - a group including the cruise line and its third-party service providers - owed "a non-delegable duty to protect their passengers" from crewmember assaults). Thus, the strict liability standard applies to both Celebrity and CR Spaclub.
To hold otherwise would permit common carriers to effectively eliminate its duty to protect passengers from the intentional torts of its crewmembers through the use of creative, carefully-drafted contractor and subcontractor agreements. We will not encourage such an arrangement. Thus, for the same reasons it would be inappropriate at this time to dismiss Plaintiff's demand for punitive damages against Celebrity, it would also be inappropriate to dismiss Plaintiff's demand for punitive damages against CR Spaclub for the intentional torts of the employee-Assailant. As *1118 such, Defendants' motion to dismiss Plaintiff's demand for punitive damages as to Count IV should be DENIED .
IV. CONCLUSION
For the foregoing reasons, the Court RECOMMENDS that Defendants' motion to dismiss [D.E. 39] be:
1. GRANTED without prejudice as to Counts I & II; and
2. DENIED without prejudice as to Counts III & IV.[4]
Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from de novo determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1) ; 11th Cir. Rule 3-1 ; see, e.g. , Patton v. Rowell, 678 Fed.Appx. 898 (11th Cir. 2017) ; Cooley v. Commissioner of Social Security, 671 Fed.Appx. 767 (11th Cir. 2016).
DONE AND SUBMITTED in Chambers at Miami, Florida, this 23rd day of April, 2019.

The Court declines to adopt the portion of the Report suggesting that Plaintiff may be given leave to amend her Complaint a third time. Because the deadline to amend pleadings was December 28, 2018, the deadline to complete discovery was April 26, 2019, and the deadline to file dispositive motions is July 26, 2019, no further motions to amend will be entertained at this late stage of the litigation.

On February 21, 2019, the Honorable Kathleen Williams referred Defendant's motion to the undersigned Magistrate Judge for disposition. [D.E. 44].

Plaintiff allegedly learned of this information as a result of her counsel's previously representation of a 16-year-old girl who alleged that the Assailant, under the pretense of taking her measurements for a complimentary fitness evaluation, committed sexual assault in a similar manner. [D.E. 35]; see Smith v. Carnival Corp, et al. , No. 17-23630-CIV-ALTONAGA/GOODMAN (S.D. Fla. filed Oct. 3, 2017) (case settled for an undisclosed amount in April 2018).

We dismiss without prejudice because we recognize that Plaintiff may not yet possess all the information necessary to make such a claim in the amended complaint, and that discovery may be required before it can seek an amendment that would meet her "plausibility" burden. A timely motion to amend on this issue will be considered and the Court's grant of dismissal on the pending complaint is obviously not intended to adjudicate such a timely motion.

While we will deny the demand for punitive damages at this stage of the case, nothing in this Order should be taken as precluding both Defendants from revisiting the issue at summary judgment.